Mr. Chief Justice Marshai.l
delivered the opinion of the court. In. this case, a series of questions has been proposed by the circuit court of the United States, for the district of Massachusetts, on which the judge® of that court were divided in opinion. The questions occurred on the trial of John Palmer, Thomas Wilson, and Barney Calloghan, who were indicted for piracy committed on the high seas.
The first four questions, relate to the construction of the 8th section of the “act for the punishment of certain crimes against t*he United States!.”
The remaining seven questions^ respect the rights of a colony or other portion of an established empire, which has proclaimed itself an independent nation, and is asserting and maintaining its claim to independence by urns.
The 8th ssecjion of the act on which these prison-were- indicted is in these words: “And be it Enacted, that" if any person or nersons shall com-, ' . mit, upon the high seas, or in any river, haven, bason, or bay, out of the jurisdiction of any particular state, murder or robberv, or any other .offence, within the body of a county would, by the law's of the United States, be punisha. ' , ... • • r ble with death; or if any captain or manner >of any ship or other vessel, shall piratically and feloniously suit away with. such ship or vessel, or any goods or *627 merchandize, to the value of fifty dollars or yield up such ship or vessel voluntarily to any pirate ; or if any seaman shall lay violent hands upon his com*, mander, thereby to hinder and prevent his fighting-in defence of his ship, or goods committed to his trust? or shall make a revolt in the ship; every such offend er shall be deemed, taken, and adjudged to he a pirate and felon, and being thereof convicted, shall suffer death; and the trial of, crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought.”
Robbery committed on land, not being punishable by the laws of the United States with death, it is doubted whether it is made piracy by this act, when committed On the high seas. The argument is understood to he, that congress did not intend to make that'a capital offe ice on the high seas, which is not a capital offence on lamí. That only such murder, and. such robbery, and such other offence as, if committed within the body of a county, would, by the laws of the United States, be punishable .with death, is made piracy. That the word “other” is without use or meaning, if this conctruction be rejected. That it so connects murder and robbery with the following member of the sentence, as to limit the words murder and robbery to that description of those offences which might be made punishable with death, if committed on land. That in consequence of this word, the relative “which” has fot its antecedent the whole preceding part of the sentence, and not the words “other offences.” That section *628 consists of three distinct classes of piracy. The first of offences which if committed within the body of a county, wpuld be punishable with death. The se* c'oncl and third, of particular offences which are enu- , , merated.
This argument is entitled to. great respect on every account; and to. the more, because, in. expounding a law which inflicts capital punishment, no over -rigid construction ought to be admitted. But the court .cannot assent tó its correctness.
The legislature having specified murder and robbery particularly, are understood to indicate clearly the intention that those offences shall amount to piracy; there could be no other motive-for. specifying them. The subsequent, words dó not appear to be employed for the purpose of limiting piratical murder and robbery, to that description of those offences which- is punishable with death, if committed on land, but for-the purpose of adding other offences, should there be any, which were not particularly .recited, and «which were rendered capital by the laws of the Uni-'fed States, if committed within the body of a county. Had the intention of congress been to render the crime of piracy dependent on the punishment affixed to the same offence, if committed on land, this intention must have been expressed in very different terms ■from those which .have been selected.' Instead of enumerating murder and rribbery as crimes which should constitute piracy, and then-proceeding to use a general term, comprehending other 'offences, the language of the legislature would have been, that “my offence” committed on the high seas, which, if *629 committed in the body of a county, would be punisha. ble with death, should amount to piracy.
The particular crimes enumerated were undoubtedly first in the mind of congress. No other motive for the enumeration can be assigned. Yet on the construction contended for, robbery on the high seas would escape unpunished. It is not pretended that the words of the legislature ought to be strained beyond their natural meaning, ror the purpose of embracing a crime which would otherwise escape with impunity; Wit when the words of a statute, in their most obvious sense, comprehehd an offence, which offence is apparently -placed by the legislature in the highest class of crimes, it furnishes an additional motive far rejecting a construction, narrowing the plain meaning of the words, that such construction would leave the crime entirely «unpunished.
The correctness-of this exposition of the 8th section is confirmed by those which follow.
The Qth punishes those citizens of the United States who commit the offences described in the 8th, under colour of a commission or authority derived from a foreign state. Here robbery is again particularly -specified.
The 10th section extends the punishment of death to accessories before the fact. They are described to be those who aid, assist, advise, &c. &c any person to “commit any .murder, robbery,, or < ther piracy aforesaid.” If the . word “aforesaid” be conne'cted with “murder” and . “robbery,” as well as with “other piracy,” yet it seems difficult, to resist .the *630 conviction that the legislature considered paurder and robbery as acts of piracy..
The robbery, as mentioned in thcactofi790 crime of robbe ry as recogniz ed and defined law.
mbícry^'com mitted by a person who is hota citizen en the higlí o^a' ahip^be riTely^to^Mb jects of a reign state, Í3 not piracy un U court® *of
The 11th section punishes acccessories after the fact. They are those who, “after any murder, felony, robbery., or other piracy whatsoever, aforesaid,?’ shall have been committed, shall furnish aid to those by whom the crime has been perpetrated. Can it be doubted, that the. legislature considered murder, felony, and robbery, committed to the high seas, as piracies ?
If it be answered, that although this opinion was "tertained, yet, if the legislature was mistaken, those whose duty it is to construe the law, must not yield to' that mistake ; we say, that when the legislature manifests this clear understanding of its own intention, which consists with its words, courts are bound by •.
of raean¡ng 0f t},e term robbery, as used in the tatute, we think no doubt can be entertained. It must a be understood in the sense in which it is recognized and defined at common law.
The question, whether this act extends farther than to Americün citizens, or to persons on board Ameri- . ’ . . can vessels, or to • offences committed against cit-zens of the United States, is not without its difficulties. The constitution having conferred on congress Power defining and punishing piracy, there be no doubt of the right of the legislature . . . ' , to enact laws punishing pirates, although they may foreigners, and may have committed nó particu°ffence against the United States, The only *631 question is, has the legislature enacted such a law ? Do the words of the act authorize the courtsof the union-to inflict its penalties on persons who are not citizens of the United States, nor sailing under their flag, ñor offending particularly against them?
The words of the section are in terms of unlimited extent. The words “any person or persons,” are broad enough to comprehend every human being.. But.general words must not only be limited tocases within the jurisdiction*of the1 state, but also to those objects to which the legislature intended to apply them. Did the legislature intend to apply these words to the subjects of a foreign power, who. in a foreign ship may commit murder or robbery. on the high seas ?
The title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the legislature. The title of this act is, “an act for the punishment of certain crimes against the United States.” It would Seem that offences against the United States, not offences against the human race, were the crimes which the legislature intended by this law to punish.
The act proceeds, upon this idea,'and uses general terms in this limited sense. In describing those wh& may commit misprision of treason or felony, the words used are “any petson or persons yet these words are necessarily confined to any person or persons owing permaraent or temporary allegiance to the United States.
The 8th section also commences with the words «any person or persons.” But these words must be *632 limited in some degree, and the'intent of the legislature will determine the extent of this limitation. For this intent we must examine the law. The sucreeding member of the sentence commences with the words, “if any captain or mariner of any ship or other vessel, shall piratically run 'away with sueh ship or vessel, or any goods or merchandize, to the value of fifty dollars» or yield up such ship or vessel voluntarily to any pirate.”
The words “any captain, onmaoner of any ship1 or other vessel,” ' comprehend- all captains and mariners, as entirely as the words “any person or persons,” comprehend the whole human race. Yet it would be difficult to believe that the legislature intended to punish the captain or mariner of a- foreign ship,, who should fun away with such ship,, and. dispose of her in a foreign port, or who should steal any goods from such ship to the value of fifty - dollars,, or who should deliver her up to a pirate when he; might have defended her, or- even according to prb1-vious arrangement. The third member .of the' sentence also begins with the general words “any- sea" man. But it; cannot be supposed that the legisla-' ture intended to punish a seaman on board a ship sailing under a foreign flag, under the jurisdiction of a foreign government, who should lay violent hands up. on his commander, or make a revolt in the ship. These are offences against the nation under whose flag the vessel sails, and within whose particular jurisdiction all on board the vessel are. Every- nation provides for such offences the punishment its own policy may dictate ; and no general words of a statute ought to *633 be construed to embrace them when committed by for-' eigners against a foreign government.
That the general words'of the two latter members of this sentence are to be restricted to offences committed ' on board the'vessels of the United States, furnishes strong reason for believing that the legislature intended to impose the same restriction on the general words .used.in the first member of the sentence.
This construction derives aid from the 10th section of the ac,t. > That section declares, that “ any person’’’ who shall “knowingly and wittingly aid and assist, procure, command, counsel, or advise, any person or persons, to do or commit any murder or robbery, &c.” shall be-an accessory before the fact, and, on conviction, shall suffer death.
It will scarcely be denied that the words “ any person,” when applied to aiding or advising a fact, are as extensive as the same words when applied to the commission of that fact. Can it be believed that the legislature intended to punish with death the subject of a foreign prince, who, within the dominions of that prince, should advise a person, about to sail in the ship of his sovereign, to commit murder or robbery ? If the advice is not a crime within the law, neither is the fact advised a crime within the law.
The opiniori formed by the court on this subject might be still farther illustrated by animadversions on other sections of the act. But it would be tedious, and is thought unnecessary.
The court is of opinion that the crime of robbery, committed by a person on the high seas, on board of *634 any ship or vessel belonging exclusively to subjects of a foreign state, on persons within a vjessel .bqlonging exclusively to subjects of a foreign stale,, is not a piracy within the true intent and meaning of the act for ^ pUn¡s},meat of certain , crimes against the United States;
Whim a civil war rages in a Wished* esta’ vernment, «reels itself into a distinct §»!*courts^of vieivrach new iy constituted government uisviewed by and executive •««ntQfihe U.
This opinion will probably decide the case to which, it is intended to apply.
Those questions which respect the rights of a part of a foreign empire, which asserts,and is contending for independence, and the conduct which must he observby the courts of the union towards the subjects of such section of an empire who may be brought before tribunals of this country, are equally delicate and i J dlfnc ult.
As it is understood that the construction which bas been given to the a.ct of congress, will render a particular answer to them unnecessary, the court will . ‘ . only observe, that such questions are generally rather political than legal in their character. They belong properly to tuose who can declare what the law shall be ; who can place the nation in such a position with respect to foreign powers as to their own judgment shall appear wise ; to whom are entrusted all its. foreign relations ; than to that tribunal whose power as well as duty is confined to the application of the. rule which the legislature may prescribe forjt. In such contests a nation may engage itself with the one. party or the other — may observe absolute.neutrality — - may recognize the new state absolutely — or may make a limited recognition of it. The proceeding, in courts mpt depend so entirely on the course^ of the govern *635 mentj that it is difficult to give a precisp answer tb questions which do not refer to á particular nation.— It may be said, generally, that .ii the government remains neutral, and recognizes the existence of a civil war, its courts cannot consider as criminal those acts of hostility which war authorizes, and which the new government may direct against its enemy. To decide other wise,, would be to determine that the war prosecuted by one of the parties was unlawful, and would be to arrange the nation to which the court belongs' against that party. This would transcend the limits prescribed to the judicial department.
The»air.e twbmony which would be suffident to prove that a vessel or person is in the service of an acknowledged, state, is admissible to prove that they nrein the service of a newly created government
it follows as a consequence, from this of the , . . subject that persons or vessels employeu the service óf a self declared government, thus acknowledged to be maintaining its separate existence by war, must be permitted to prove the fact of their being actually employed in such service, by the same testimony which would be sufficient to prove that such vessel or person was employed in- the service of an acknowledged statel The seal of such acknowledged government cannot he permitted to prove itself; but it may be proved by some testimony as the nature of the case admits ; and the fact that such vessel or person is employed may be. proved without proving the seal.
Mr.. Justice Johnson.
The first of these questions arises on the eonstrubtibn of the first division of the 8th section of the act for the punishment of certain crimes.
*636 That act comprises two classes of cases, the second of which may again be subdivided into two divisions. In the -second class of cases, e.ach crime is specifically described in the ordinary mode of defining crimes, and so far the. constitutional power of defining and punishing, piracies and felonies on the high seas, is' strictly complied with. But, whh regard to the first class of cases, the legislature refers for a definition to other sources — to information not to be found in that section itsélf. The words are these : ££If any persons shall commit, upon the high seas, &c. murder or robbery,, or ,any other offence, which, if committed in the body of a county, would, by the laws of the United States, be punishable with death, &c. such person shall, upon conviction thereof, suffer death.” Thus referring to the common law definition of murder and robbery alone, or to the common law definition of murder and robbery with the superadded statutory, requisite of being made punishable with death, if committed^on land, in order to»define the offence which, under that section, is made capitally punishable.
The crime of robbery is the offence charged in this .indictment, and the question is, -whether it- must not be shown that it must have been made punishable with death, if committed on land, in order to subject the offender1 to that punishment, if committed on the high seas. And singular as it may appear, it really is the fact in this case,, that these mens’ lives may depend upon a comma more or less, or upon the question whether a relative, which may take in three antecedents just as -well as one, shall he confined to one *637 alone. Upon such a question I here solemny declare, that I never will consent to take the life of any man in obedience to any court; and if ever fore ed to choose between obeying this court, on such a point, or resigning my commission, I would not hesitate adopting the latter alternative.
But to my mind it is obvious, that both the intent of the legislature, and the construction of the words, are in favour of the prisoners. This, however, is more than I need contend for, since a doubt relative to that construction or intent ought to be as effectual in their favour, as the most thorough convictión.
When the intent of the legislature is looked into, it is as obvious as the light, and requires as little reasoning to prove, its existence, that the object proposed was with regard to crimes which may be committed either ■on the sea or land', to produce an uniformity in the punishment, so that where death was inflicted in the one case’, it should be inflicted in another. And congress certainly legislated1 under the idea, that the pun* ishment of death had been previously enacted for. the crime of robbery pn laud, as it had in fact been , for murder, and some other crimes. And in my opinion* this intent ought to govern the grammatical construction, and make the relative to refer to ajl three of the antecedents, murder, robbery, and other crimes, instead of-being confined to the last alone. That it may be so applied consistently with grammatical correctness, no one can deny; and if so, in favorem vite, we are, in my opinion, legally bound to give it that construction. Again ; there, is no reason. to ¿think that the word other is altogether a supernumerary *638 member of the sentence. To give the construction contended for in behalf of the United States, that word mu§f be rendered useless and inoperative; the sentence has the same meaning with or without it. But if we retain it, and substitute.its. definition, or examine its effect upon the meaning of the terms associated with it, we then have the following results : other is commonly defined to mean not the same, or (what is certainly synonymous,)1 not before mentioned. With this expression, the sentence.would read thus : “murder, or robbery, or any offence not before mentioned,” for which, the punishment of death is by law inflicted. And as the use of the comma is exceedingly arbitrary and indefiite, by expunging all the cominos from the Sentence the meaning becomes rtill more obvious. Or, if instead of subsisting the words not before mentioned, we introduce the single term tin enumerated, in the- sense of which the term other is unquestionably used by the legislature, the conclusion becomes irresistible in favour of.the prisoners. There is another view of this subject that leads to the same conclusion.; by supplying an obvious elision, the same'.meaning- is given to this section. The word other is responded to by than, and the repetition of the excluded words’ is understood. Thus,in the case before us, by supplying the- elision, we “make murder, robbery,, or any crime other than murder or robbery,!’ made punishable, &c, the signification of which .words, had they been used, would have left no doubt.
There are several inconsistences growing out of a construction unfavourable to the prisoners, which *639 merit the. most serious consideration. The first is, the most sanguinary character that it gives to this law in its operation ; for it is literal!y true, that under it a whole ship’s crew may.be consigned to the gallows, for robbing a vessel of a single chicken,■ even although a robbery committed on land for thousands, may not have been made punishable beyond whipping or confinement. If natural reason is not to be consulted on this point, at least the mild and benignant spirit of the laws of the United States merits attention. With regard to the mail'.this inconsistency actually, may occur under' existing laws, should the mail ever again be carried by water, as it Ibas, been formerly. This cannot be consistent with’the intention of the legislature.
But, it is contended, if congress had not intended, to make murder and robbery punishable with death,, independently of the circumstance of . those offences being so made punishable when committed on land} they would have omitted those specified crimes altogether from Ibis section, and have enacted generally^, that all crimes made . punishable with death on land should be.punishable with death if committed on .the seas, without enumerating murder and robbery.— This is fair reasoning; and in any case but one of life and death, it might have some weight.. But in no case, very great weight; because, in that respect, a legislature is subject to no laws in the selection of the course to be pursued. In this case, the obvious fact is, that they . commenced enumerating, and fearing some omission of crimes then supposed subject by law to. death,these *640 general descriptive words are resorted to. But every other crime that' this division of. the section comprises was punishable with death, both these which precede robbery in the .enumeration., and those which come after. Robbery, except in case of the mail, stands alone; and, no doubt, was introduced under the idea, that that also had the same punishment attached to it. If it had not, in fact,, then it was the case on which the legislature intended to act; and according to my views of the grammatical or philological construction of the sentence, it. is one on which they have not acted.. This construction derives considerable force, also, from the consi deration that this act is framed on t he model of the British statute, which avowedly had' this uniformity for its object.
The second question proposed in this case is one on which, I presume;-Iheré can be no1 doubt. For the definition of robbery under this act we must look for the definition, of the term, in the common law, or we will find it no where; and, according to my construction, superadd td tfctit definition the circumstance of its being made punishable With death, under, the laws of the United States, if commitfsd on land, and you have described the offence made punishable under this section.
There are eleven questions certified from the circuit court of Massachusetts; but of those eleven,. these two- only appear to me to arise offt of the case. The transcript contains nothing but the indictment and impannelling of the jury. No motion; no evidence; no demurrer ore tenus, or case stated, appears upon the transcript, on which the remaining questions could *641 arise. On the indictment the two first questions might well have been raised by the court themselves',, as of counsel for the prisoners ; but as far as appears to this court,.all the other questions might as well have been raised in any other case; I here enter my protest against having these general questions adjourned to this court. We are constituted to decide causes, and not to discuss themes,- or digest systems. It is true, the words of the act, respecting division of opinion in the circuit court, are general; but independently of the con~ sideration that it was not to be expected' that the court could be divided, unless upon questions arising out of some cause depending, the words in the first proviso, “ that the cause may be proceeded in,” plainly show that the questions contemplated in the act are questions arising in a cause depending-; and if so, it ought to be shown that they do arise in $Jie cause,. and are not merely hypothetical. In the case of Martin v. Hunter,a this court expressly acted upon this principle, when it went into a consideration of the questión, whether any estate existed in the plaintiff in error, before it would consider the question on the construction of the treaty, as applicable to that estatp.
If, however, it becomes necessary to consider the other questions in this case, I will lay down a few general principles, whith, I believe, will answer all : 1. Con gress can inflict punishment on offences committed (jii board the vessels of $he United States, or by citizens of the United States, any where ; but congress cannot make that piracy which Í3 not piracy by the law ®f ha* *642 lions, in order to give jurisdiction to its own courts over such offences.
2. When open war exists between a nation and its subjects, the subjects of the revolted country are no-^010 ]ja^]e j0 be punished as pirates, than the subjects ■ Who adhere to their allegiance; and whatever .immunity the law of nations'gives to the ship, it extends to atf who serve on board of her, excepting duly the responsibility of individuals to the laws of their respective .countries.
3. The proof of a commission is not necessary to exempt an individual serving on board a ship engaged in the war, because any ship rtf a belligerent may capture an enemy ; and whether acting under a commission or not, is an immaterial question as to third persons: he must answer that to his own government. Ttis only necessaty to prove two-'facts.: 1st. The existence of open war: 2dly. That the vessel is really documented, owned, and commanded as a belligerent vessel, and not affectedly so for .piratical purposes.
. 4. For proof of property and documents, it is not to be expected that any.better evidence can be produced •than the seal of the revoltecbcountry, with such reasonable evidence as the case may admit of, to prove it to be known as such; and a seal once proved, or admitted to a court, ought afterwards to be acknowledged by the court officially, at least, as qgainst the party who has once acknowledged it.
Certificate. — This' cause■ came on to be heard on the transcript of the record of the circuit court of -the United- States, for the district of Massachusetts, *643 on the questions on which the judges of that court were divided; and was argued by counselon the part of the United States. On consideration whereof, this court is of opinion that a robbery committed on the high seas,- although such robbery, if comm'itted on land, would not, by the laws of the United States, be punishable with death, Is piracy under the eighth section .of an act entitled, "an act for the punishment of certain crimes against the United States;” and that the circuit courts of the United States have jurisdiction thereof. And that the crime of robbery, as mentioned in +he said act of congress, is the crime of robbery ns recognized and defined at cummonlaw
This court is further of opinion, that the crime oí robbery, committed by a person on the high seas, on board of any ship or vessel belonging exclusively to subjects of a foreign state, on persons within a vessel belonging exclusively to subjects of a foreign state, is not piracy within the true intent and meaning of the act, entitled, "an act for the punishment of certain crimes against-the Uuited States,” and is not punishable in the courts of the United States.
This court is further of opinion, that when a civil war rages in a foreign nation, one part of which separates itself from the old established government' and erects itself into a distinct government, the courts of the union must view such newly constituted government as it is viewed by the legislative and executive departments of the government of the United States. If the government of the union remains neutral, but recognizes the existence of a civil war, the courts *644 of the union cannot consider as criminal those acts of hostility, .which war authorizes, and which the new government may direct against its enemy. In general, the same testimony which would be sufficient to prove that a vessel or a person is in me service of an acknowledged state, must be admitted to prove tüat a vessel or person is in the service of such newly erected government. Its seal cannot be allowed to prove itself, but may be proved by such testimony as the nature of the case admits. And the fact that a ves~ sel or person is in me service of such government may be established otherwise, should it be impraeticáble to prove the seal.
All which is ordered to be ' certified to the circuit court of the United States for the district of Massachusetts.

 7 Cranch, 603. Ante, vol. 1, p. 304.