GARRIGUS ET AL. *v.* THE BOARD OF COMMISSIONERS OF PARKE COUNTY.

STATUTE.—*Construction.*—*Rule of.*—The rule of construction, that "words importing the singular number only, may also be applied to the plural of persons and things" (sec. 798 of the code), is only to be applied to the words of a statute or instrument when the plain and evident sense and meaning of the words, to be derived from the context, render such a construction necessary to give effect to the intention of the maker of the statute or instrument.

SAME.—*Title of Act.*—The title of a statute may be a guide to the intention of the law-makers, where the statute appears to be ambiguous or doubtful.

SAME.—*Railroads.*—*Aid by Counties to Railroad Companies.*—Under the act of

Garrigus *et al. v.* The Board of Commissioners of Parke County.

May 12th, 1869, "to authorize aid to the construction of railroads by counties," etc., it is not legal for the board of commissioners of a county to submit to the voters of the county a proposition to vote for or against an appropriation to two or more railroad companies at the same time, when the proposition is so submitted that the voters cannot vote for one and against the other, but must vote for both or against both.

SAME.—The rights and powers conferred by said statute can only be exercised in strict conformity to, and by a rigid compliance with, the letter and spirit of the act.

APPEAL from the Parke Circuit Court.

BUSKIRK, C. J.—The appellants filed a complaint in the court below, to perpetually enjoin the collection of a tax that was levied by the board of commissioners of Parke county, to aid in the construction of the Indiana and Illinois Central Railroad and the Indiana Northern and Southern Railroad, which special tax was levied in pursuance of a vote that was taken in said county on the 13th day of November, 1869.

A demurrer was sustained to the complaint; to which ruling a proper exception was taken; and, the appellants refusing to plead further, final judgment was rendered for the appellee; from which judgment the appellants have appealed to this court, and have assigned for error the sustaining of the demurrer to the complaint.

The petition which was presented to the board of county commissioners, was as follows:

"To the Hon. Board of Commissioners of Parke County, Indiana:

"The undersigned, freeholders of said county, would respectfully petition your honorable board to make an appropriation of money to aid the Indiana and Illinois Central Railroad and the Indiana Northern and Southern Railroad Companies, now duly organized under the laws of the State of Indiana, in the construction of said railroads in said county, by taking stock in, or donating money to, said companies, in the amount of two hundred thousand dollars in said county, one-half of the amount appropriated to be given to each company, not exceeding, however, two per centum

upon the taxables of said county, on the condition, as to the said 'Indiana Northern and Southern Railway Company,' that they commence the work on their road between Brazil, in Clay county, and Attica, in Fountain county, within six months from the day of election making the appropriation, and that said company complete the building of said road within two years from said day, and that the town of Rockville, in said county, is made a point, and said road run within one-half mile of the town of Bridgetown, in said county."

The order of the board was as follows:

"Ordered, that the county auditor give notice, by publication in the 'Republican,' that there will be an election held, on Saturday, November 13th, 1869, in the several townships throughout said county, at the usual place of holding elections, for the purpose of taking an expression of the citizens of the county relative to being taxed for the purpose of aiding in the construction of the railroads as set forth in the above petition."

Various objections are urged against the validity of the levy of the special tax, but the conclusion at which we have arrived renders it unnecessary for us to consider and determine any of the questions that have been argued with so much ability by the learned counsel engaged in this cause, but one, and that is stated in the complaint, as follows:

"Second. Because the aforesaid petition indicates and asks an appropriation to two railroad companies, and because said election was holden in such a manner that the said voters could not vote for or against an appropriation to either of said railroad companies without voting for or against both."

The question is now presented for the first time, under the act of May 12th, 1869, whether it is legal for the board of commissioners of a county to submit to the voters of a county a proposition to vote for an appropriation in aid of two or more companies, when the question is so submitted

that the voters cannot vote for one and against the other, but must vote for both or against both.

The question is one of great practical importance to the people of the State, and we have given it very thoughtful and mature consideration. We have been greatly aided by the very able and exhaustive oral argument with which we have been favored.

It is maintained by the appellants, that a vote for or against two railroad companies is illegal and void, for two reasons; first, that it is manifest from the language of the act under consideration that it was the intention of the legislature that the vote should be taken for or against an appropriation to aid in the construction of one railroad; second, that a vote which is taken for or against two railroads, where the voters do not have the right to vote for one and against the other, is against public policy, for the reason that it effects a combination of opposite and diverse interests, and produces a system of log-rolling, by which the proposition to aid two roads is carried, when, if the vote had been taken separately on each proposition, both might have been defeated, or one might be carried and the other defeated.

It is maintained by the appellee, that the title of the act in question should be considered, with the view of ascertaining the intention of the law-makers; and that the title of said act being in the plural, the singular number used in the body of said act should be construed to refer to the plural.

It is further maintained, that a vote for or against aid to two railroads is not against public policy, and will not prevent a fair and unbiased expression of the popular will; and that, as the act limits the amount which may be levied, in any two years, to two per centum upon the taxable property, there is no danger that unreasonable and oppressive burdens will be placed upon the tax payers.

It will appear from an examination of the act of May 12th, 1869, that where reference is made to the aid of railroads, it is invariably in the singular number. Nowhere in the body

of the act is reference made to railroad companies. The following expressions will be found in the act: in the first section, "to aid a railroad company;" "to such company." In the third section will be found, "aiding in the construction of the railroad named in such petition." ·In the sixth section is the following: "to aid such railroad company." In the seventh section is this expression: "the appropriation to the railroad company." In the twelfth section occur these words: "such railroad appropriation." The propositions which are submitted to the voters are stated thus: "For the railroad appropriation;" "Against the railroad appropriation."

The following rule of interpretation is stated by Smith, in his work on Constitutional and Statutory Construction, sec. 545, p. 688: "In the interpretation of statutes, if the words used express clearly the sense and intention of the law, they must always govern. For, as we have seen, it is not permitted to interpret what is plain and manifest, as it stands in no need of interpretation. When an act is conceived in clear and precise terms—when the sense is manifest, and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents to the mind."

But it is earnestly maintained by the learned counsel for the appellee, that "words importing the singular number only, may also be applied to the plural of persons and things." Sec. 798 of the code, 2 G. & H. 336.

This construction is only to be given to the words of a statute or instrument, when the plain and evident sense and meaning of the words, to be derived from the context, render such a construction necessary to give effect to the intention of the makers of the statute or instrument. We do not think we would be justified in placing such a construction upon the statute under consideration. Full effect and force can be given to the act without such a construction.

It is also maintained that the title of a statute may be a guide to the intention of the law-makers, and in support of

this position reference is made to the following authorities: *Smith* v. *The State*, 28 Ind. 321; *The United States* v. *Palmer*, 3 Wheat. 610; *Lessee of Burgett* v. *Burgett*, 1 Ohio, 469; *Eastman* v. *McAlpin*, 1 Kelly, 157; *Cohen* v. *Barrett*, 5 Cal. 195.

The above proposition is correct, with this additional qualification, "where the statute appears to be ambiguous or doubtful." 1 Cooley's Blackstone, 59.

It was said by MARSHALL, C. J., in *The United States* v. *Palmer, supra*, that, "the title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the legislature."

It was also said in *The United States* v. *Fisher*, 2 Cranch, 386: "On the influence which the title ought to have in construing the enacting clauses, much has been said; and yet it is not easy to discern the point of difference between the opposing counsel in this respect. Neither party contends that the title of an act can control plain words in the body of the statute; and neither denies that, taken with other parts, it may assist in removing ambiguities. Where the intent is plain, nothing is left to construction."

Judge COOLEY, in his work on constitutional limitations, page 141, states the law the same as the above, but adds: "Titles to legislative acts, however, have recently, in some states, come to possess very great importance, by reason of constitutional provisions, which not only require that they shall correctly indicate the purpose of the law, but which absolutely makes the title to control, and exclude everything from effect and operation as law which is incorporated in the body of the act, but is not in the purpose indicated in the title. These provisions are given in the note, and it will readily be perceived that they make a very great change in the law."

But it is not said by Judge COOLEY, or any other writer that we know of, that the constitutional provisions in reference to the titles of an act have so changed the rules of construction that the title may be looked to when the words of the statute

are plain and unambiguous; and we do not think that such rules have been so changed. The only effect of such provisions in reference to titles of an act is to give greater weight and consideration to the title in ascertaining "the mind of the legislature," than was formerly given to titles, where the language of the act is ambiguous and doubtful.

The title of the act under consideration is as follows: "An act to authorize aid to the construction of railroads by counties and townships taking stock in and making donations to railroad companies."

The constitution of Indiana provides that, "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Sec. 19, article 4, 1 G. & H. 39.

The subject-matter of said act is aid to railroad companies. Under our constitution all laws have to be general wherever a general law can be passed. A local or special law on the subject of aid to a railroad company would have been unconstitutional and void. And as the subject-matter of the act must be expressed in the title, the title of the act in question was made broad and comprehensive enough to embrace and apply to all railroad companies in the State. But it does not result that more than one railroad company can apply for such aid at the same time and in the same proceeding, where the vote must be for or against both. As we have seen, the title embraces all the railroad companies organized in the State, while the body of the act provides for separate and distinct proceedings on the part of the several railroad companies in obtaining aid in the construction of their respective roads. All are entitled to the benefits of the act, but each must receive the aid separately.

We are very clearly of the opinion that the plain and obvious purpose of the legislature, to be derived from the plain and unambiguous language of the act, was, that the

Garrigus *et al. v.* The Board of Commissioners of Parke County.

voters of a county or township should have the privilege of voting for or against any proposition that might be submitted to them, without being compelled to vote for or against some other proposition that they would not have freely and of their own choice voted for.

The views above expressed are based upon the wording of the act, and what seems to us to have been the intention of the legislature. We are not without authority on the proper construction of the act in question. The act of May 12th, 1869, was copied mainly from a statute of Illinois, and the Supreme Court of that state have placed a construction upon such statute. It is well settled that where a statute is borrowed from the statutes of another state, the construction placed upon such statute by the courts of such state is entitled to great weight and consideration.

The Supreme Court of Illinois, in the case of *Supervisors of Fulton County* v. *The Mississippi and Wabash R. R. Co.,* 21 Ill. 338, placed a construction upon said statute. The court say: "Another objection has been made by complainants which we deem necessary to notice now. It is as to the manner in which this question of subscription to the stock of this road was submitted to the vote of the people." The court, after quoting two sections of the statute, proceed to say: "The order made by the board of supervisors of Fulton county, under this law, does not seem to be in strict conformity to it. The law evidently contemplates a vote for or against subscription, to some one company only, specifying the company. The order is for a subscription to the Mississippi and Wabash River Railroad Company, and the Petersburg and Springfield Railroad Company, seventy-five thousand dollars to each.

"This is not only not pursuant to the law, but is manifestly unfair. All elections, as well for measures as men, should be perfectly free, uninfluenced by any consideration, other than the merits of the individual man or measure proposed. We boast of the freedom of the elective franchise; should we not strive to swell the boast by its purity also?

A single, isolated measure, such as a railroad, may not unite a majority of a county to whom it is proposed. It may favor, if constructed, one portion of a county more than another, and thereby be prevented from receiving a clear majority vote, such as the law clearly contemplates shall be given. Is it fair, in order to accomplish this object, to attach another measure to it, to be voted on at the same time, which may benefit the opposing portion of the county? The law never intended that two roads should be coupled together, and the people forbidden to vote for one if they did not also vote for the other, the one road being really a bribe offered for votes for the other. The truth is, the voters of Fulton have never had an opportunity to vote, and never have voted this subscription, for the question was at no time distinctly before them. The question before them was, will you vote for a subscription to two roads? Neither road has received the approving vote of the people, and until that is done, until the naked, single question shall be fairly presented to those voters, they ought not to be bound, or injuriously affected, by any such jockeying management and log-rolling. By this system, condemned as it has always been by the moral sense as well as sense of justice of the whole country, it should at this day find no favor in the courts. We do not hesitate to say, this proposition to vote on two roads at the same time was not authorized by the law, and is a fraud on the people.

"This tacking one measure upon another, is unjust in another view, as it gives the county court power to weigh down a popular single measure, by attaching odious measures to it, and thus virtually depriving the people of their right to vote on the one measure, the success of which would greatly promote their interests.

"Such maneuvering should be condemned everywhere, as unfair and unjust, and we so regard it."

The ruling in the above case was followed in two subsequent cases in that court, *The People, etc.,* v. *County of Tazewell*, 22 Ill. 147; *Clarke* v. *The Board of Supervisors of Hancock*

*County*, 27 Ill. 305, and such may be regarded as the settled construction of the law of that State.

The State of Iowa has a law very much like ours. The Supreme Court of that state has placed a construction upon the manner of submitting the vote to the people. In the case of *McMillan* v. *Lee County*, 3 Iowa, 311, the court say: "There is still another objection which we must regard as equally fatal to the validity of the proceedings, on which the authority claimed by the county judge in this instance, is based. Every proposition for the borrowing or expenditure of money by a county, and for the levy of a tax to pay the same, receives its vitality as a law from the majority of the votes of the people cast in its favor. Such being the case, we think it is evidently the policy of the law, no less than its spirit and intention, that the vote of the people should be permitted to be cast for or against the propositions submitted, with no restraint upon the free expression of their choice. We have said that in our opinion, the law contemplates unity and distinctness in the question authorized to be submitted, in contradistinction to the uniting of several questions in the same proposition, or the incumbering of any proposition with conditions not required or not permitted by the statute. The proceedings coming under our notice in this cause present a most forcible illustration of the wisdom of what we deem to have been the policy of the statute. The people were not called upon, nor were they permitted, to decide by their votes whether the county of Lee should borrow money for one purpose or object. No single question was submitted to their votes to be decided upon its own merits, or by the judgment of the people in its favor. Nor were three propositions submitted at once, to be voted upon and to be decided upon, either singly or in the aggregate. No question submitted was permitted to stand by itself, or to take effect upon the decision of the people in its favor. On the contrary, while it is contained in the proposition, that a majority of the votes cast in favor of the subscription to the stock of either company, should

be considered its adoption by the people, it is also further contained and declared, 'that the said subscription shall not be made to either of said companies, unless the vote shall be carried in favor of each and all of them.'

"We cannot regard this in any other view than as an attempt to impose a condition upon the taking effect of the vote of the people adopting a proposition submitted to them, wholly unauthorized by the law. They were entitled to have the question of the county taking stock in either of these railroad companies submitted to their decision, unincumbered by any such condition or proviso. To make the success of any one proposition depend upon the adoption of all, was to take from the expression of the will of a majority of the people that essential validity intended by the law to be imparted to it."

The above decisions are very much in point, and greatly strengthen and support the views expressed by us. We regard the reasoning as wise and sound, and that the conclusions reached are in accordance with the theory and genius of our form of government.

There was much discussion, at the argument, as to the true rule of construction which should be applied to the act under consideration. The one party contended that the act should receive a strict construction, while the other insisted upon a liberal construction. There is in the State of New York a statute very similar to ours, differing only in matters of detail. The Court of Appeals in that state recently laid down the rules of construction that should be applied to such laws, which meet with our hearty approval.

In *The People* v. *Smith*, 45 N. Y. 772, the court say: "The power sought to be delegated to a portion of the taxable inhabitants of a municipality to burden and charge the property of all, and subject it to taxation for a purpose foreign to those for which local governments are organized, and with a view to contingent benefits, in respect to which men may differ in opinion, and in aid of works which in most instances will more largely benefit some than other

portions of the district, alike and equally charged, is one of grave importance, seriously affecting the rights and pecuniary interests of the citizen, and can only be exercised in strict conformity to, and by a rigid compliance with, the letter and spirit of the act conferring the authority. Nothing can be taken by implication, and the act, as it imposes a burden upon the public, and in a manner deprives the owner of the full control and disposition of his property, by giving to others the power to encumber it, should be strictly construed in favor of the rights of property."

It is again said by the court: "While it is for the legislature to decide upon the wisdom and expediency of the enactment of a law, and the province of the court is simply to interpret the act and give it effect according to the intent of the legislature, a statute in derogation of common right will not be extended by implication, but its operation and effect will be confined to cases within the express language employed, giving it its ordinary signification, in the absence of any evidence that the legislature intended to use it in a different sense."

We are very clearly of the opinion that the court below erred in sustaining the demurrer to the complaint.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.

*S. Claypool,* for appellants.

*J. E. McDonald, J. M. Butler,* and *E. M. McDonald,* for appellee.