Owen, J.
I. It is maintained in behalf of the relator that the enactment in question is in conflict with section 27, article 2, of the constitution of Ohio, which ordains that: “ no appointing power shall be exercised by the general assembly, except as prescribed in this constitution, and in the election of United States senators.”
The reasoning is that by this act the defendants, Pugh, Outhwaito and Eberly, and Martin and Donaldson 'are appointed by the general assembly to redistrict the city of Columbus iuto wards ; that by the designation of the provision that “ it shall be the duty of the trustees of the sinking fuud heretofore appointed, under an act passed April 16, 1883, ... to proceed within five days after the passage of this act . . . to redistrict,” etc., the individuals who comprise the board are clothed with the duties defined by the act, and not the board itself; that the designation of “ the trustees heretofore appointed ” exclude any hereafter appointed, and that no successors of any present trustee can be lawfully appointed or qualified to act; that as they are the only persons ever appointed under that act, and as Columbus is the only city of the first grade of the second class in this state, and as the language “ heretofore appointed” can not be rejected, but must be given its ordinary and natural import, it is as if these trustees had been designated by name.
This view is not without plausibility to support it; yet with great respect for counsel it is submitted that the construction contended for is narrow and constrained. The act under which these trustees were appointed (80 Ohio L. 139) provides that: “In cities ... of the first grade of the second class, there shall be a board, designated as the trustees of the sinking-fund . to be appointed . . by the court of common pleas of the county in which said city is situated.” The act under consideration employs the statutory designation of this board, and giving to the language “ heretofore appointed” that liberal and reasonable *110 construction to which it is entitled, we have no difficulty in construing this provision to have reference to that board of trustees of the sinking fund in office in the city of Columbus at the time of the taking effect of the act, and not to its members as individuals.
If we are right in this view, it follows that instead of appointing these trustee, the general assembly has simply clothed them with additional powers and duties. That this is not the exercise of the appointing power by the general assembly is how too firmly established to be called in question. State v. The Judges, 21 Ohio St. 1; Walker v. Cincinnati, 21 Ohio St. 14; State v. Covington, 29 Ohio St. 116.
II. It is further maintained that the act in question conferred on these trustees corporate powers in violation of section 1 of article 13 of the constitution, which ordains that, “ the general assembly shall pass no special act conferring corporate powers.”
Without considering in this connection whether this is a special act, let us inquire if it confers corporate powers upon the trustees of the sinking fund.
Their duties are to redistrict the city of Columbus into wards, designate one voting place in each ward, and perform other duties pertaining to a division of the city into wards.
What constitutes “corporate powers” depends largely upon whom the powers in question are conferred. The conferring of certain powers upon an existing corporation may bring them within the designation of “ corporate powers,” while conferring the same duties or functions upon individuals, or unincorporated bodies, fails to impart to them the attributes of corporate powers.
Neither the act in question nor that under which these trustees were appointed constituted them a corporate body.
Nor are they in any substantial sense municipal officers of the city of Columbus.
No reason has been shown by counsel in the argument in this case why the general assembly may not by an act divide a city into wards ; indeed, eminent counsel for the re *111 lator conceded in argument that he found nothing in the constitution that stood in the way of such a proceeding; but contended that such a redistrieting must be by a local and special act. Unquestionably. It would seem to be legally and physically impossible for the general assembly to redistrict a city, by defined boundaries, into wards, and still preserve to the act the qualities of a general law.
If the general assembly may, by a special act, divide a city into wards, it is not easy to see why it may not (avoiding the exercise of appointing power), invest some intermediate agency Avith poAver to accomplish the same end.
"While the division of a city into wards may be preliminary, and in fact essential to its proper equipment for the exercise of the usual functions of municipal government, it is not necessarily the exercise of any of such functions. How this question would be affected by conferring upon the existing officers of a municipal corporation, by a special act, poAver. to redistrict it into wards, is not a question now before us.
We conclude that, conceding this to be a local and special act, it does not, by authorizing the trustees of the sinking fund to redistrict the city, confer upon them corporate poAvers, and is not within the inhibition of section 1, article 13, of the constitution.
Local and special legislation is not forbidden by the constitution. It plainly requires that all laws of a general nature shall have a uniform operation throughout the state, hut it does not require that all acts of the general assembly shall be of a general nature.
The view we have here expressed is supported by State v. Covington, 29 Ohio St. 102 ; State v. Powers, 38 Ohio St. 54; and State v. Baughman, 38 Ohio St. 455.
III. It is further urged in support of the proceeding'of the relator that if this court shall be of opinion that this act does not confer corporate powers upon the trustees of the sinking fund, it does clearly confer such powers upon the city of Columbus, and being a special act, it contravenes *112 the .provision already quoted that, “the general assembly shall pass no special act conferring corporate powers.”
(1). Is this a special aet relating exclusively to Columbus? It is now too late to question the validity of the plan of classification incorporated in our statutes, and which has received the repeated sanction of this court. State v. Brewster, 39 Ohio St. 653; McGill v. State, 34 Ohio St. 228; State v. Bowers, 38 Ohio St. 54; Bronson v. Oberlin, 41 Ohio St. 476. It is not to be urged against legislation, general in form, concerning cities of a designated class and grade, that but one city in the state is within the particular classification at the time of its enactment.
Nor is it fatal to the act in question that the belief or intent of the individual members of the general assembly who voted for the act was .that it should apply only to a particular city. Neither would it subject the act to the imputation that it was local and special, that, in the opinion of the general assembly, gross abuses had intruded themselves into the administration of the municipal affairs of a particular city, which seemed to call upon the general assembly to repair the wrong, for, as eminent counsel for defendants well say: “Some individual exigency, abuse, or malfeasan ce has formed the originating cause of almost, if not all, the acts of the general assembly — those of a general as well as those of a special nature.” Although it is alleged in the petition and admitted by the demurrer that no other city than Columbus is within, or can, before July next, come within the class and grade contemplated by the act, yet, if any other city may, in the future, by virtue of its increase in population and the action of its municipal authorities, ripen into a city of the same class and grade, and come within the operation of the act, it is still a law of a general nature and is not invalid, even if it confer corporate powers.
On the other hand, if it is clear that no other city of the state can in the future come within its operation without doing violence to the manifest object and purpose of its enactment, and to the clear legislative intent, it is a local *113 and special act, however strongly the form it is made to assume may suggest its general character.
It is not the form a statute is made to assume, but its operation and effect, which is to determine its constitutionality. State v. The Judges, 21 Ohio St. 11; State v. Hipp, 38 Ohio St. 199.
A thorough and thoughtful examination of the various provisions of the act in question will, it is believed, reveal, with clearness and certainty, its true character. Beginning with its title: “An act to reorganize and consolidate cities of the first grade of the second class (Columbus), and to reduce the tax levy of said cities.” Although the word “ Columbus ” was inserted in this title with deliberation, by the hand of the general assembly, it would be unfair and illiberal to magnify the importance of, or give controlling effect to, so slight a circumstance. Yet we are not at liberty wholly to ignore it. It is one of the indices pointing — ■ feebly it may be — to the legislative intent. “ The title is framed in the same manner as the bill, and is sanctioned by the vote of both branches of the legislature; we may, therefore, consider it as explanatory of the object of the law.’’ Burnet, J., in Burgett v. Burgett, 1 Ohio, 480; U. S. v. Fisher, 2 Cranch, 386; U. S. v. Palmer, 3 Wheat. 610; Commonwealth v. Slifer, 53 Pa. St. 71.
Section 1 provides : “ That in cities of the first grade of the second class, it shall be the duty of the trustees of the sinking fund, heretofore appointed under an act passed April 16, 1883, . . . to proceed within five days after the passage of this act . . . to redistrict such cities.”
It is admitted that no other city of the state of the designated class and grade had such a board of trustees, or could before July next. What has already been said in this opinion concerning “ the trustees of the sinking fund heretofore appointed,” may aid us here. While we ought not unduly to magnify the importance of this language, yet it seems too plain for argument that it was within the legislative intent that this act should apply to a city of the first *114 grade of the second class, having, at the passage of the act, “ trustees of the sinking fund.” It was known that Columbus was that city. Suppose the provision had been, “ that in cities of the first grade of the second class, having trustees of the sinking fund heretofore appointed, it shall be the duty of such trustees to proceed within five days after the passage of this act to redistrict such cities.” .Would it be questioned by anybody that this designation would have applied exclusively to the city of Columbus as certainly as if the city had been named, oras if the designation had been “cities of the first grade of the second class having a state house therein ?” This would effectually have annulled the classification ; withdrawn every attribute of a general law, and rendered the act local and special. This is the plain legal effect of the language actually employed. Then, while no other city can, before July next, come within its grade and class, the emphatic command of the act is that it shall be enforced promptly — within five days of its passage the work shall begin. It is not necessary to contend that the act must perish if not at once enforced. If there should be slight delay and neglect ou the part of the trustees in beginning their work within the five ■days, there seems little doubt that mandamus would lie to enforce obedience to its requirements, if the act were valid. But the fact still remains that the legislative intent was ■that it should be presently and promptly enforced.
It provides (section 4) that “ at the first municipal election held . . . after thepassage of this act, the judges of the . . . election shall be chosen by the electors of the wards present at the organization of the polls.”
It provides (section 6) that at the first municipal election held . . . next after such subdivision and redistricting (which is to be done promptly), one member of the, city council shall be elected in each ward.
It provides (section 7) that “ at the first municipal election in such city, next after such division and redistricting, one member of the board of education of such cities shall be elected in each of the wards.”
*115 It provides (section 9) that a board of control of three members shall be chosen by the council elected at the first anual election held after the passage of this act, and within twenty days after the organization thereof.
It provides (section 18) that the officers of such cities, except the mayor, shall be chosen by the council elected at the first municipal election held therein after the passage of the act. These provisions contemplate the election to be held in April, 1885, and that when the trustees have completed their work of redistrieting, their powers are exhausted. No future action by them is contemplated. If we are right in this, it seems just as clear that the act does not contemplate the future appointment and action of similar trustees in any other city. While the plan for redistricting is temporary, the powers conferred on the city are to be permanent.
It will be observed that it is logically and physically impossible that any of the foregoing provisions can ever, in the history of the state, apply to any other city than Columbus.
It is just as clear that it was not within the legislative intent that they should apply to any other city. No other city can, in all time, come within the operation of the act without the aid of a construction of its language so violent as to amount to an officious assumption of legislative power by the court construing it.
It seems too clear for serious contention, then, that this is a local and special act applying exclusively to Columbus.
(2). This brings us to the question : Does the act confer corporate powers upon, that city? If it does, then so far as it does, it must fall, as in that case it clearly violates the inhibition that “ the general assembly shall pass no special act conferring corporate powers.”
We are not without the light of previous adjudications of this court to aid us in determining what are corporate powers as applied to the present case. In State v. Cincinnati, 20 Ohio St. 18, it ivas held that investing a municipal cor *116 poration with the additional powers of municipal government, of police regulation, of judicial jurisdiction, and of taxation and assessment, was the conferring of corporate powers. In this case, outlying territory was brought within the corporate limits of the city, and hence within the operation of the powers already possessed by the city.
In State v. Cincinnati, 23 Ohio St. 445, it was held that a special act assuming to confer on the city of Cincinnati the control, management, and power to make all rules for the government of “ The Commercial Hospital of Cincinnati,” was one conferring corporate powers, and hence unconstitutional.
State v. Mitchell, 31 Ohio St. 607, in its application to the case at bar. is instructive. White, C. J., delivering the opinion, said : “ It is true, the act in question is in the form, in a sense, of a general law. But as was said in the case of The State v. The Judges, 21 Ohio St. 11, the constitutionality of an act is to be determined by its operation, and not by the mere form it may be made to assume. The act is entitled ‘An act to provide for the improvement of streets and avenues in certain cities of the second class.’ And by the first section it is made applicable to ‘ cities of the second class having' a population of over thirty-one thousand at the last federal census.’ Columbus is the only city in the state having the population named at the last federal census, and the act, therefore, applies alone to that eity, and never can apply to any other. The effect of the act would have been precisely the same if the eity had been designated by name instead of by the circumlocution employed. That the act undertakes to confer corporate power upon the city can not be doubtedfor while the property owners are required to be promoters of the improvement, the authoi’ity to direct it to be made is vested in the city council, and the bonds of the .city are to be used to raise money to pay for it.”
Still more instructive is the case of State v. Constantine, 42 Ohio St. 437.
In that ease the court was called upon to consider the *117 constitutional validity of an act authorizing “ cities having a population of twenty thousand and not exceeding thirty thousand five hundred by the last federal census, and that have not been advanced to cities of the second grade, second class,” to elect by a vote of the electors, police commissioners, who, with the mayor, should constitute a board, invested with “ all powers and duties with respect to the appointment, regulation, government, and control of the police.” The act provided that no elector should at any election vote for more than two persons for such commissioners, and that any ballot containing the names of more than two persons for such office should not be counted.
The proceeding was in quo warranto to oust the members of this board from the exercise of their offices. The validity of the act was assailed upon the grounds, (1) that it abridged the constitutional'right of each voter at such election to vote for each candidate for each office, and, (2), that it was a special act conferring corporate powers. Judgment of ouster was entered. The principal opinion was delivered by Mcllvaine, J., who placed the judgment upon the first ground of objection.