PLAGER, Circuit Judge,
Concurring.
I join the opinion of Judge Reyna and his claim construction conclusions. This case is yet another example—and an extreme example—of problems with claim drafting and their ensuing consequences. To resolve the question of whether the Tredegar product infringed 3M’s patents, the district court was called upon to construe some thirty separate terms, which it did in a fifty-five page opinion. We in turn are being asked to review a number of the district court’s constructions. Since we treat claim construction as a question of law, we have reserved to the appellate courts the last word on words.
Our panel manages to agree on all but one of the contested constructions, affirming some and reversing some. But we disagree on one particularly convoluted claim phrasing, unfortunately one that runs through many of the claims.
I appreciate that there are four different patents involved, and that the particular technology for manufacturing the product is quite detailed, although the products themselves are fairly basic—the material at issue is used for example in diapers. Nevertheless, when claims are larded with terms such as “substantially,” “preferentially,” and “relatively,” and when it takes four judges and some seventy pages of densely written opinions to find meaning in these terms, there is considerable evidence of a failure by the claim drafters to be clear and precise, and, beyond that, of a shortcoming in the patent examination process that permits claims to be so drafted.
Sometimes such ambiguity is the result of sloppy drafting, and sometimes it appears that claims are drafted with a degree of indefiniteness so as to leave room to later argue for a broad interpretation designed to capture later-developed competition. The problem is exacerbated when, as here, there is a conflicting or *1335 indeterminate written description and prosecution history with regard to the claim terms at issue. Claim construction then becomes a game of crystal ball gazing, not resolved until this court’s gaze is announced.
The particular claim construction issue that divides the three appellate judges provides a perfect example of the problem. The claim term, “continuous microtextured skin layer,” truly is perplexing. Does “continuous” apply to the microtexturing, the skin layer, or both? Does it mean the microtexturing is everywhere (except perhaps for manufacturing flaws), or can it cover only a part of the skin layer as long as that part is continuous? Relying on the Chicago Manual of Style, 3M argues that “continuous” and “microtextured” are adjectives that separately modify “skin layer,” and thus, the claim term does not require that the microtexturing itself be continuous. According to 3M, if the applicant wanted “continuous” to modify “microtextured,” the applicant would have used the adverb “continuousii/.”
3M makes an interesting argument to be sure. But the argument creates its own grammatical problems. For example, there is no comma between “continuous” and “microtextured.” And the Chicago Manual of Style also tells us that adjectives that separately modify a noun are generally separated by a comma, unless of course the second adjective is a unit with the noun being modified (which would favor Tredegar’s construction). The Chicago Manual of Style § 6.33 (16th ed.2010). The applicant seems to have understood this comma concept, and in fact used it when referring in the written description to a “continuous, deeply textured, mierostructured surface.” '034 patent, col.15 11.2-3. But the nuances of comma usage, like 3M’s adverb argument, seem to me a tenuous foundation for an entire claim construction on which substantial liabilities may rest. See United States v. Palmer, 16 U.S. 610, 638, 3 Wheat. 610, 4 L.Ed. 471 (1818) (noting that “the use of the comma is exceedingly arbitrary and indefinite”); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 249, 109 S.Ct. 1026, 1035, 103 L.Ed.2d 290 (1989) (characterizing a comma as a “capricious bit of punctuation”) (internal quotation marks omitted).
Much like the claim’s grammar, the written description provides little help deciphering the meaning of the disputed term. Certainly, the '034 patent has a lot of disclosure: nearly 30 columns of it. The patent has 33 different examples, 16 tables, and 24 figures. The patent’s problem does not lie in the quantity of its disclosure; it lies in the disclosure’s relevance to the language used in the claims.
The applicant knew or should have known that the claim term “continuous microtextured skin layer” was highly relevant to the patented technology. The applicant wrote the term nine times in the first eight claims.[1] Strangely, however, the disclosure does not reflect this relevance. “Continuous microtextured skin layer” does not appear one single time in the written description. The written description provides no discussion of “continuous microtextured skin layer,” no definition. Language resembling the claim term appears here and there, but mutated versions of claim terms often confuse more than they elucidate.
While ultimately I have voted to join Judge Reyna for the reasons I explain shortly, Judge O’Malley in her dissent-in-part makes an argument for the opposite construction based on the prosecution history. The argument is not without merit, although again, I do not find the prosecution history a shining example of clarity.
*1336 Cases like this—claim construction issues such as this one—may well deserve application of a principle analogous to the contract doctrine of contra proferentem. See Williston on Contracts § 32:12 (4th ed.). When a term is ambiguous, a crystal ball matter, the ambiguity should be construed against the draftsman. (Or better yet, the claim should simply be invalidated as indefinite, though our court has not seen fit to go there as yet.)
Without labeling it as such, we have already used this principle to construe claims for compliance with 35 U.S.C. § 112. See Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed.Cir.1996) (“Where there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we consider the notice function of the claim to be best served by adopting the narrower meaning.”); see also A Theory of Claim Interpretation, 14 Harv. J.L. & Tech. 1, 81 (2000).
The contra proferentem principle would require the applicant to draft clear claims, using simple, direct sentences,[2] proper grammar, and definitions in the written description where appropriate. It harmonizes with the notice function of patent law. It would result in applicants—and prospective patentees—investing more resources on the front end, during drafting, and less resources on the remedial end, during litigation. Better drafting of patent applications can only improve the efficiency of the patent system by clearly delineating a patentee’s property rights, thereby reducing wasteful and unnecessary litigation.
Specifically in this case, when I gaze in my crystal ball, I see, in addition to the verbal jousting, a district judge who struggled at length to make sense of the claims, and I see a patentee (more correctly a patent applicant) who had the last clear chance—infringement is after all a tort— to avoid this kind of unnecessary claim construction game.[3] My crystal ball tells me to vote against the patentee’s construction of “continuous microtextured skin layer” and in favor of a competitor who should not have the risk of guessing wrong about what a claim term could possibly mean.

. The term is included in claim 8, albeit with a typographical error in ''continuous.''

. Since claim clarity is so critical to defining a patentee’s property rights, I puzzle why claim drafters are expected to draft each claim as a tortuous, "wherein"-laden, run-on sentence. Nothing could be more conducive to less clarity. But this is a matter for the U.S. Patent and Trademark Office to resolve; see Manual of Patent Examination Procedure § 608.01 (m) (stating that "each claim must be the object of a sentence”).

. It will be interesting to observe in the years ahead whether the new post-grant administrative review procedures under the AIA result in clearer and more defined terminology in claims. The recent surge in applications seeking the newly-available review procedures before the PTO suggests a significant opportunity is in the offing.