**Gerald F. O'NEILL**

v.

**CITY OF EAST PROVIDENCE et al.**

**No. 83–141–Appeal.**

Supreme Court of Rhode Island.

Aug. 7, 1984.

---

Norman L. Grant, Pawtucket, for plaintiff.

Bruce A. Wolpert, Iannuccillo & Hines, Inc., Providence, for defendants.

OPINION

BEVILACQUA, Chief Justice.

The United States District Court for the District of Rhode Island has certified to this court the following questions of law pursuant to Supreme Court Rule 6

"1. Whether the Defendant City of East Providence could authorize the expenditure of funds or incur debt by the adoption of a resolution under R.I.Gen.Laws §§ 24-1-1—24-1-15.

"2. If the answer to question number 1 is yes, whether § 1-3 of the Charter of the City of East Providence, Rhode Island, is constitutional in accord with Article XXVIII of the Articles of Amendment to the Rhode Island Constitution, the so-called 'Home Rule Amendment,' as applied to this action in that:

a. It authorizes the City of East Providence to acquire property within or without its corporate limits for any city purpose in fee simple, or in lesser interest or estate, by purchase, gift, devise, lease or condemnation, and to sell, lease, mortgage, hold, manage and control such property as its interests may require; or

b. Said provision does not provide the method of payment for any property so condemned; or

c. Whether it is a valid constitutional delegation of legislative power; or

d. Whether it is a constitutional delegation of legislative power, in that it delegates the right to condemn for 'city purposes.'

"3. If the answers to questions 1 and 2 are yes, whether the City Council for the City of East Providence has proper city

or public purpose in condemning the real property described in the Ordinance enacted by said City Council on or about March 12, 1981.

"4. If the answers to questions numbered 1, 2 and 3 are yes, whether the Defendant City of East Providence complied with the Constitution of the State of Rhode Island and Providence Plantations in passing, on or about June 22, 1981, Resolution No. 26, entitled 'RESOLUTION DECLARING THE NECESSITY OF TAKING LAND FOR HIGHWAY PURPOSES UNDER THE PROVISIONS OF CHAPTER I, TITLE 24, OF THE GENERAL LAWS OF RHODE ISLAND'

    a.  In that pursuant to R.I.Gen.Laws § 24–1–1, a city or town may 'determine that the public interest and convenience makes necessary or advantageous' the acquisition of real property for highway purposes.

    b.  In that R.I.Gen.Laws § 24–1–15 allows for payment for the acquisition of real property taken pursuant to this chapter in a manner other than by payment of money."

The District Court has provided a statement of facts relevant to the present controversy. The constitutionality of two separate condemnation proceedings is in issue. The facts indicate that plaintiff is the owner of several parcels of land and the real estate thereon located at the southerly corner of Bullocks Point Avenue and Morrone Avenue in East Providence. The defendant city of East Providence (city) sought to acquire a portion of this property in order to effectuate certain urban-renewal plans. The stated objective of these plans, the so-called Riverside Square Revitalization Project, was to increase the flow of business and revenue into the Riverside Square area of the city through the construction of a small retail building containing a convenience store.

On March 12, 1981, the council passed an ordinance pursuant to § 1–3 of the charter and article XXVIII of the Rhode Island Constitution. This ordinance authorized the city to acquire the portion of plaintiff's property needed for the Riverside Square Redevelopment Project. Following these condemnation proceedings, plaintiff's land was to be sold to a private developer for construction of the proposed convenience store.

A second, separate condemnation of plaintiff's land was subsequently undertaken by the city. On June 22, 1981, the council adopted resolution No. 26 entitled "Resolution Declaring the Necessity of Taking Land for Highway Purposes under the Provisions of chapter 1, title 24 of the General Laws of Rhode Island." This resolution authorized the city to acquire the eight-foot area of plaintiff's land that fronted on Bullocks Point Avenue. In enacting this resolution, the council acted pursuant to the provisions of G.L.1956 (1979 Reenactment) chapter 1 of title 24 rather than § 2–22 of the charter.

The plaintiff subsequently instituted an action in the United States District Court for the District of Rhode Island, alleging that the council acted in violation of the State and Federal Constitutions in authorizing the two condemnation proceedings.

I

The first issue to be resolved is whether the city could properly authorize the expenditure of funds or incurrence of a debt relative to the highway condemnation of plaintiff's land by means of a resolution under chapter 1 of title 24. Section 2–22 of the charter states that "every act of the council providing for the expenditure of funds or for the contracting of indebtedness shall be by ordinance." This section further provides for specific procedures to be followed in the enacting of any ordinance. In this case, the council, in authorizing the taking of plaintiff's land for highway purposes, followed the procedure outlined in chapter 1 of title 24. The plaintiff contends that because the condemnation and purchase of plaintiff's property necessarily involves an expenditure of funds by

the city, the council was required to proceed by enacting an ordinance according to the procedure mandated in the charter. The plaintiff concludes that the condemnation of his property is void and invalid because of the council's failure to comply with the provisions of § 2–22 of the charter.

■ The authority of a municipality to engage in self-government does not extend to enacting local laws that are inconsistent with those provisions of the general laws enacted in conformity with the Legislature's reserved powers. *Marro v. General Treasurer of the City of Cranston*, 108 R.I. 192, 195, 273 A.2d 660, 662 (1971). This court has stated that when the provisions of a city or town charter conflict with general laws of statewide application, the general laws take precedence. *Lynch v. King*, 120 R.I. 868, 876–77, 391 A.2d 117, 122 (1978); *State v. Krzak*, 97 R.I. 156, 162, 196 A.2d 417, 421 (1964). In this case, § 2–22 of the East Providence City Charter and chapter 1 of title 24 of the general laws, a statute of general application not affecting the form of local government, provide differing procedures to be followed in eminent-domain proceedings. According to the principle enunciated in *Lynch* and *Krzak*, both *supra*, the provisions of the general laws control. Consequently, the council acted properly in authorizing the condemnation of plaintiff's land for highway purposes pursuant to the procedure outlined in chapter 1 of title 24 of the general laws. The plaintiff's contention that the city council acted improperly in failing to proceed according to § 2–22 of the city charter is thus without merit.

## II

The next issue, which relates to the condemnation for redevelopment purposes, concerns the constitutionality of § 1–3 of the city charter. Section 1–3 provides in relevant part:

"The city shall have all the powers granted to cities by the home rule * * *. The city may acquire property * * * for any city purpose * * * the city shall have and may exercise all powers which, under the constitution of this state, it would be competent for this Charter specifically to enumerate * * *."

The plaintiff argues that the aforesaid section contravenes the prohibition of article XXVIII of the Rhode Island Constitution against enacting local laws that conflict with the Constitution or the General Laws of the state of Rhode Island.[1] The plaintiff more specifically states that this section of the city charter is unconstitutional because it grants an overly broad condemnation authority to the city of East Providence, makes no provision for the method of payment, and is an unconstitutional delegation of legislative power because it contains insufficient guidelines and delegates the authority to condemn for "city purposes."

■ Although the home-rule amendment provides a broad grant of lawmaking authority to cities and towns, that authority is not without limitation. A specific limitation on this right of self-government is found in art. XXVIII, sec. 4, of the Rhode Island Constitution which specifically reserves to the General Assembly the power to legislate "in relation to the property, affairs and government of any city or town by general laws *which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town.*" (Emphasis added.)

■ This court has consistently held that when the provisions of a city or town charter conflict with legislation reserved to the General Assembly under article XXVIII of the Rhode Island Constitution, the provisions of the general laws supersede those

---

1. Section 2 of article XXVIII of the Rhode Island Constitution specifically provides that "[e]very city and town shall have the power at any time to adopt a charter * * * enact and amend local laws * * * not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly."

of the charter. In *City of East Providence v. Local 850, International Association of Firefighters,* 117 R.I. 329, 339, 366 A.2d 1151, 1156 (1976), this court held that because the Firefighters Arbitration Act was a statute of general application that applied to the firefighters of any city or town in the state, it therefore superseded the provisions of the city charter. *See also City of Cranston v. Hall,* 116 R.I. 183, 186, 354 A.2d 415, 417 (1976). Similarly, in *Pitassi v. Personnel Hearing Board of East Providence,* 116 R.I. 116, 119, 352 A.2d 658, 660 (1976), this court struck down a right of appeal granted under a city charter because it intruded upon a power reserved to the General Assembly. *See also Lynch v. King,* 120 R.I. 868, 876, 391 A.2d 117, 122 (1978).

In this case, the matter regulated under § 1–3 of the charter is the eminent-domain power of the city. Several provisions of the general laws similarly prescribe the authority of a city or town to acquire private property through eminent-domain proceedings. *See* G.L.1956 (1979 Reenactment) chapter 1 of title 24; G.L.1956 (1980 Reenactment) chapter 32 of title 45. In this case, because the condemnation in issue was purportedly achieved pursuant to a redevelopment scheme, we shall limit our discussion to the provisions of chapter 32 of title 45. That statute prescribes the procedure for the acquisition of land pursuant to a redevelopment project. As a law of general application that does not affect the form of government of any city or town, chapter 32 of title 45 falls within the lawmaking powers reserved to the General Assembly under art. XXVIII, sec. 4.

■ The instant case therefore confronts us with the situation in which the city charter and a provision of the general laws attempt to legislate on the same subject matter: the eminent-domain authority of the city. The provisions of § 1–3, however, do not directly conflict with the highly specific provisions of chapter 32 of title 45. Rather, the city charter appears to guarantee the right while chapter 32 of title 45 prescribes the precise manner by which that authority is to be exercised. When a general law conflicts with a charter provision, the applicable provision of the general laws must be given effect. *International Association of Firefighters,* 117 R.I. at 339, 366 A.2d at 1156; *Pitassi,* 116 R.I. at 119, 352 A.2d at 660. Applying that principle to this case, we hold that a city or town, in following the provisions of its charter, is constrained to abide by those statutes of general application that relate to the subject matter regulated in the charter. We read § 1–3 in conjunction with chapter 32 of title 45 and therefore do not find that the condemnation authority is overly broad, nor does it fail to provide for the method of payment or in any way contain insufficient guidelines.

### III

In addressing the third question submitted, plaintiff argues that the condemnation of his property and resale to a private developer for the purpose of building a convenience store constitutes a taking for private purposes in violation of the Rhode Island Constitution.

■ The Rhode Island Constitution requires that the taking of private property by eminent domain be for a public use. R.I. Const., art. I, sec. 16; *see Romeo v. Cranston Redevelopment Agency,* 105 R.I. 651, 658, 254 A.2d 426, 431 (1969). Amendment XXXIII to the Rhode Island Constitution, however, provides that the condemnation and sale of property to a private person for private purposes pursuant to a redevelopment scheme constitutes a proper public use. Specifically, amendment XXXII, § 1, states:

"The clearance, replanning, redevelopment, rehabilitation and improvement of blighted and substandard areas shall be a public use and purpose for which the power of eminent domain may be exercised * * *. The general assembly may authorize cities, towns, or local redevelopment agencies to undertake and carry out projects approved by the local legisla-

tive body for such uses and purposes including * * * the sale or other disposition of any such properties to private persons for private uses * * *."

■ General Laws 1956 (1980 Reenactment) chapter 32 of title 45 mandates the procedure that a city or town must follow in condemnation proceedings pursuant to a redevelopment plan. The provisions of the redevelopment statute contain a comprehensive set of guidelines to which a city or town must adhere before a particular project can qualify under redevelopment. We find that the condemnation of plaintiff's land as part of the Riverside Square Revitalization Project fails to comply with the criteria set forth in chapter 32 of title 45 and therefore the resale of plaintiff's property to a private party does not consti-

tute a public use as defined in amendment XXXIII.

The redevelopment statute provides, *inter alia*, that when a redevelopment project is undertaken, the city or town must have a planning commission as well as a specific master plan for the particular project.[2] Additionally, it is required that the planning commission or a redevelopment agency formulate a redevelopment plan or plans and submit these to the local legislative body.[3]

These redevelopment plans, the contents of which are carefully prescribed by statute, must conform to the general or master plan of the planning commission, and additionally receive the approval of the commission.[4]

2. General Laws 1956 (1980 Reenactment) § 45–32–2 provides that "[t]he community must have a planning commission." Section 45–32–3 further provides:

"General community plan—Minimum requirements.—The community must have a master or general community plan adopted by the planning commission or the legislative body, and in either case the plan must include at least the following:

(a) A land use plan which designates the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, recreation, education, public buildings and grounds, and other categories of public and private uses of land.

(b) The general location and extent of existing and proposed major thoroughfares.

(c) A statement of the standards of population density and building intensity recommended in and for the various districts and other territorial units, together with estimates of future population growth, in the territory covered by the plan, all correlated with the land use plan.

(d) A description of the area or areas in which blighted and substandard conditions are found and recommendations as to the area or areas which should be designated for redevelopment."

3. Section 45–32–6 provides:

"Selection of project areas—Formulation of redevelopment plans.—The redevelopment agency may of its own motion, or shall at the direction of the legislative body, select one or more project areas comprising all or a portion of a redevelopment area, and formulate a redevelopment plan for each such project area. Redevelopment plans may be prepared

by the planning commission in the event the members of the agency have not been appointed or at the request of the agency."

4. Section 45–32–7 states:

"Submission of redevelopment plans—Conformity to master plan.—All redevelopment plans shall be submitted to the legislative body by the redevelopment agency. Every redevelopment plan shall conform to the master or general community plan insofar as the latter applies to the redevelopment area. The agency shall consult with the planning commission of the community in formulating redevelopment plans before their submission to the legislative body. Whenever a redevelopment plan is submitted to the legislative body, a copy thereof shall be submitted to the planning commission which shall report to the legislative body within thirty (30) days on the redevelopment plan and its conformity to the master or general plan of the community."

Section 45–32–8 provides:

"Contents of redevelopment plan.—The redevelopment plan shall include, without limitation, the following:

(a) A description of the boundaries and location of the project area;

(b) A description of the existing blighted and substandard conditions in the project area;

(c) A plan describing proposed land uses in the project area;

(d) Proposed standards of population densities, land coverage and building intensities;

(e) A description of proposed changes in streets and utilities;

(f) A description of proposed changes in zoning or exceptions, variances, or modifications thereto;

In the instant case, the only plan developed was the "Summary of Recommended Development Plan for the Commercial Revitalization of Riverside Square," which was formulated by a private firm. This plan consisted of the proposal that the Riverside Square Revitalization Project should consist of a 10,000-square-foot retail building containing a drugstore anchor and three or four other convenience retail outlets. The council failed to create a planning commission or redevelopment agency to oversee and effectuate its redevelopment objectives. Aside from the commercially developed plan, there is no evidence of any general or master plan authorized by the statutorily required planning commission or redevelopment agency. The evidence indicates only that the city desired to revitalize the particular area in which plaintiff owned land. To accomplish this revitalization, the council solicited the professional expertise of a commercial firm, which in turn created an informal plan to achieve the objective of increasing the flow of business into the Riverside Square area. This purported revitalization scheme does not meet the requirements for a redevelopment plan pursuant to chapter 32 of title 45. We find that the taking of plaintiff's land for resale to a private developer for private profit does not constitute proper public use as that term is defined in Amendment XXXIII.

## IV

The final issue concerns the second condemnation of plaintiff's land for highway purposes pursuant to chapter 1 of title 24.

(g) A general statement showing that the proposed redevelopment plan conforms to the master or general community plan;
(h) A statement showing the lands in the project area to be acquired and buildings or structures to be demolished and removed;
(i) A general statement of proposed conditions, covenants, and other restrictions controlling the disposal and future use of land and buildings in the project area;
(j) A general statement of the extent of relocation resulting from the proposed redevelopment of the area and the proposed method for rehousing of displaced persons;

The plaintiff argues that the provisions of §§ 24–1–1—24–1–15 violate the Rhode Island Constitution on several grounds.[5]

The plaintiff initially contends that the provision of § 24–1–1 that states that a city or town may acquire property whenever "the public interest and convenience makes [the acquisition] necessary or advantageous" is unconstitutional because it violates the rule of necessity that underlies the condemnation authority of a city or town. According to plaintiff, the statutory provision that private property may be acquired if the acquisition would be "advantageous" violates the Rhode Island Constitution because a city or town may acquire property only when the acquisition of such property is a matter of necessity. We find plaintiff's argument to be without merit.

This court has long recognized that absolute necessity is not required in eminent-domain proceedings. The appropriate standard to be applied is whether the land taken is reasonably required for a public purpose. *In re Rhode Island Suburban Railway Co.*, 22 R.I. 457, 459, 48 A. 591, 592 (1901); *see Romeo v. Cranston Redevelopment Agency*, 105 R.I. 651, 658, 254 A.2d 426, 431 (1969). The statutory language of § 24–1–1 which permits a condemnation of private property if advantageous falls within this standard. We equate the term "advantageous" with the standard that the acquired land be reasonably required for a public purpose. We therefore hold that when a city or town undergoes condemnation proceedings because acquisition of the property in ques-

(k) A statement of the estimated cost of carrying out the redevelopment plan, and a description of the method of financing the proposed redevelopment project;
(*l*) A general statement showing how the purposes of chapters 31 to 33, inclusive, of this title would be attained by such redevelopment."

5. Article I, sec. 16, of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation."

tion is advantageous to a highway-development scheme, such a taking is a constitutional exercise of the power of eminent domain.

 The plaintiff further argues that § 24–1–15 is in violation of the Rhode Island Constitution because it permits payment for the acquisition of property in a manner other than by payment of money. Section 24–1–15 provides that

"[w]henever in the opinion of the city or town council a substantial saving in the cost of acquiring title can be effected by conveying other real property, title to which is in the city or town, to the person or persons from whom the estate or interest in real property is being purchased or taken * * * the city or town council shall be and hereby is authorized to convey such other real property of the city or town to the person or persons from whom the estate or interest in real property is being purchased or taken * * *."

Article I, sec. 16 of the Rhode Island Constitution states simply that just compensation must be paid when private property is condemned. This court has held that the owner of property which is condemned cannot be compelled to receive his compensation in any other form than money. *Reynolds v. State Board of Public Roads,* 59 R.I. 120, 123–24, 194 A. 535, 537 (1937). Thus, a city or town council that purports to exercise its power of eminent domain by requiring an unwilling owner to give up his property in exchange for other property fails to meet the constitutional requirement of just compensation.

 We do not, however, find § 24–1–15 to be per se violative of the Rhode Island Constitution. Article I, sec. 16, does not raise a complete bar to an exchange of property in eminent-domain proceedings. We give a restricted reading to the statute and hold that § 24–1–15 meets constitutional standards and may be validly invoked when an owner consents to the exchange of property offered by the city or town. In the case of a property owner who does not consent to the proffered exchange of prop-

erty, however, the constitutional requirement of just compensation is met only by the payment in money of the fair market value of the condemned property. *See J.W.A. Realty, Inc. v. City of Cranston,* 121 R.I. 374, 380, 399 A.2d 479, 482 (1979); *Corrado v. Providence Redevelopment Agency,* 117 R.I. 647, 653, 370 A.2d 226, 229 (1977); *O'Donnell v. State,* 117 R.I. 660, 665, 370 A.2d 233, 236 (1977).

All of the questions as certified are answered, and the papers in this case with our answers certified thereon are ordered sent back to the United States District Court for further proceedings.