### TOWN OF JOHNSTON

v.

### David J. SANTILLI et al.

### No. 2004–320–Appeal.

Supreme Court of Rhode Island.

March 3, 2006.

---

Louis DeSimone, Jr., Esq., for Plaintiff.

Stephen M. Robinson, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

A hostile and fractious relationship between town hall and the school committee in the Town of Johnston has led to repeated clashes in the courtroom and in hearings before the Commissioner of Education. The specific battles between them primarily have been over money and budgetary control, but also have included allegations of intimidation of school department personnel, including the Superintendent of Schools, by both the Mayor and the Director of Finance.

The dispute before us presently involves cross-appeals from a declaratory judgment in which a justice of the Superior Court ruled that the Charter of the Town of Johnston does not require that the town solicitor be the exclusive legal counsel to the school committee.[1] For the reasons set forth herein, we reverse.

## I

### Facts and Procedural History

The Johnston Town Charter establishes the Office of Town Solicitor and reserves in the mayor the authority to appoint a town solicitor as well as assistant town solicitors. The charter expressly delineates the duties of the town solicitor: he or she is to "be the attorney for the town and legal advisor to the Mayor, town council, and all other departments, offices and agencies of the town government." Despite this clear language, the school committee often has engaged the services of attorneys not affiliated with the town solicitor's office for a variety of reasons. It is also beyond dispute that the town administration and the school committee frequently have been embroiled in legal battles with each other, some of them visceral in nature. For example, in 1995 and again in 1998, the school committee alleged that the town failed to honor school department invoices, and the parties appeared before the Commissioner of Education to resolve the controversy. Also, in 1995, the school committee and the town again appeared before the commissioner when the school committee claimed that the town failed to provide it with sufficient funding, thereby rendering it unable to comply with state and federal mandates and its contractual obligations.

In 2001, the Superior Court granted the school committee injunctive relief when it again demonstrated that the municipality wrongfully had refused to honor school department invoices. Among the school committee's allegations was a claim that the town had frozen certain student activity accounts, threatening the cancellation of student field trips and other extracurricular activities. Each time one of these intramural slugfests has occurred, the town solicitor has represented the town and the

---

1. The defendants are the elected members of the school committee and the superintendent of Johnston public schools. For simplicity, we will refer to all defendants as the "school committee" or "defendants."

school committee has retained outside counsel.

The positions of the parties concerning legal representation became crystallized in 1997, when the Johnston Federation of Teachers (union) sued the school committee, which then engaged independent counsel to defend itself. The union objected, arguing that only the town solicitor could represent the school committee. The solicitor moved to intervene to support the union position. It appears that cooler heads prevailed at that point, however, and in February 1998, the town council enacted Ordinance 1029, which authorized the school committee to hire its own lawyer.

Accompanying Ordinance 1029 was Town Council Resolution 421, passed on the same date and appointing the law firm of Asquith, Mahoney and Robinson to represent the school committee "on all matters until further notice." The resolution also expressed an intent to submit legislation to the General Assembly to amend title 16 of the General Laws so that the school committee would be enabled to engage its own legal counsel on a permanent basis.

The era of good feeling was short-lived, however, and on July 1, 2002, town solicitor Louis A. DeSimone corresponded with David Santilli, the chairman of the Johnston School Committee. In his letter, DeSimone reminded Santilli that the charter provides that the town solicitor "shall act as attorney for all departments and agencies of the Town of Johnston." DeSimone expressed his intention to begin to provide legal services to the school committee, and asked that all legal matters be referred to his office. Apparently, the solicitor's letter did not have the desired effect on the school committee, which continued to employ outside counsel as it saw fit. Matters came to a head on December 9, 2002, when the town council repealed Ordinance 1029.

Shortly thereafter, on January 13, 2003, the town filed a complaint against the school committee in Superior Court, in which it alleged that notwithstanding the directive of the town solicitor and the repeal of the ordinance authorizing the retaining of outside counsel, the school committee had continued to employ attorney Stephen M. Robinson to represent it in legal matters. This, the town contended in its complaint, directly contravened the express mandate contained in the town charter. The town therefore asked the court to declare that only the solicitor could act as legal advisor to departments and agencies of the town, including the school committee. The town also requested the court to enjoin the school committee from seeking independent legal counsel. The school committee counterclaimed and argued that due to the contentious relationship between the town and the school committee, the town solicitor, whose interests were aligned with those of the town, could not represent the school committee without violating relevant provisions of the Supreme Court Rules of Professional Conduct and the Rhode Island Code of Ethics. The school committee requested that the court declare that it had the right to retain independent legal counsel, and it asked that the town be enjoined from interfering with this right. The parties filed cross-motions for summary judgment.

The Superior Court granted the school committee's motion. The justice specifically did not rule on whether the town solicitor, in accordance with the Rules of Professional Conduct and the Code of Ethics, must refrain from representing the school committee when particular conflicts of interest arise. Rather, he declared that the Johnston Town Charter, which requires the solicitor to act as counsel for municipal departments and agencies of the town, does not apply to the Johnston

School Committee, and therefore the school committee has the right to seek legal services from attorneys other than the town solicitor or assistant town solicitors.

The town filed a timely appeal, in support of which it argues that the justice abused his discretion when he ruled that the school committee has the inherent authority to engage its own legal counsel. The school committee cross-appealed, and argues that the trial court should have resolved the issue of whether the relationship between the school committee and the town solicitor creates a conflict of interest that would prohibit the solicitor from providing legal advice or representation to the school committee.

## II

## Standard of Review

 Both the school committee and the town maintain that because this case arises from an appeal of a declaratory judgment, this Court should review the justice's decision for abuse of discretion. *See Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997) (setting forth the standard of review for declaratory judgments). However, the basis of the parties' dispute actually hinges on the interpretation of Johnston's home rule charter, and this Court previously has explained that "[w]hen a court is called upon to construe the provisions of a municipal charter, the usual rules of statutory construction are employed." *Coventry School Committee v. Richtarik*, 122 R.I. 707, 713, 411 A.2d 912, 915 (1980) (citing *Borromeo v. Personnel Board*, 117 R.I. 382, 367 A.2d 711 (1977)). Therefore, when we interpret the meaning of a charter provision, we apply the same *de novo* standard of review that we use when faced with questions of statutory construction. *See State v. Partington*, 847 A.2d 272, 276 (R.I.2004) (applying *de novo*

review after party sought declaratory judgment in statutory construction case). When we do so, we give the words of a charter provision "their usual and ordinary meaning." *Carter v. City of Pawtucket*, 115 R.I. 134, 138, 341 A.2d 53, 56 (1975).

## III

## Analysis

### A. The Johnston Town Charter

To determine the effect of Johnston's Town Charter on the school committee's right to hire independent counsel, we begin our analysis, as always, with the language of the disputed charter provisions:

"Sec. 6–4. Duties.

*"The town solicitor shall be the attorney for the town and legal advisor to the mayor, town council, and all other departments, offices and agencies of the town government* and shall direct the work of the assistant solicitors. It shall be the duty of the town solicitor to:

"(1) Appear for and protect the rights of the town in all actions, suits and proceedings, civil or criminal, in law or equity, brought by or against it or for or against any of its departments, including the board of canvassers and registration;

"(2) Examine and make recommendations in the form of all ordinances and resolutions and the form of all initiations for bids, contracts and other documents sent out by any department, office or agency of the town;

"(3) Perform such other duties appropriate to his office as the provisions of this Charter, the Mayor and/or the town council may require." (Emphasis added.)

"Sec. 6–6. Special powers.

"The statement in this Charter of duties of the town solicitor shall not be deemed to abridge such special powers

and duties as are now and hereafter conferred upon town solicitors by law; *however, no department or agency shall employ any other attorney at the expense of the town or through the use of any funds from the federal government or other source, unless otherwise provided by this Charter, or unless the town council shall approve such employment by ordinance. Any such attorney so authorized by the town council shall be subordinate to the town solicitor and in all litigation to which the town may be a party, said attorney shall be under the direction of the town solicitor."* (Emphasis added.)

The school committee contends that sec. 6–4 of the charter does not impact its right to hire independent counsel because the school committee is not a "department[ ], office[ ], [or] agenc[y] of the town government," and thus it does not fall within the language of the charter. It further maintains that sec. 6–6 has no bearing on whether the school committee may employ its own lawyer because the portion of that provision addressing this issue has not been ratified by the General Assembly.

## B. Laws Affecting Public Education

In arguing their respective positions, both sides start from a constitutional source. On one hand, the school committee argues that article 12, sec. 1, of the Rhode Island Constitution vests the General Assembly with authority and control over matters affecting public education. On the other hand, the town maintains that the Home Rule Amendment to the Constitution, set forth in article 13, just as concisely vests the cities and towns of Rhode Island with "the right of self government in all local matters."

Under the state's constitution, the General Assembly has a responsibility to "promote public schools * * * and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education * * *." R.I. Const. art. 12, sec. 1. Pursuant to this directive, the Legislature enacted G.L.1956 § 16–2–9(a), which vests school committees with the "entire care, control, and management" of local schools, as well as enumerating additional rights and duties.[2] Although the statute is silent about the right to retain legal counsel, the school committee suggests that the broad administrative powers conferred include the right to retain its own attorney.

Although the Legislature is constitutionally charged with overseeing education in this state, towns and cities are permitted to control local government pursuant to the Home Rule Amendment to our state constitution. R.I. Const. art. 13. The interplay between the Legislature and town governments in regulating public education was discussed in *Royal v. Barry*, 91 R.I. 24, 160 A.2d 572 (1960). In that case, we explained that "no provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly." *Id.* at 30, 160 A.2d at 575.

■ Notwithstanding the right of towns and cities to regulate local matters, we have held previously that "[w]hen local laws conflict with general laws of statewide application, the former must defer to the

---

**2.** In addition to conferring general responsibility for administrative functions upon local school committees, G.L.1956 § 16–2–9 also delegates several specific responsibilities. *See, e.g.,* § 16–2–9(a)(3) (requiring compliance with state and federal laws); § 16–2–9(a)(6), (13) to (15) (granting school committees authority over personnel matters); § 16–2–9(a)(18) (conferring upon school committees the right to enter into contracts).

latter." *Local No. 799, International Association of Firefighters AFL–CIO v. Napolitano,* 516 A.2d 1347, 1349 (R.I.1986) (citing *O'Neill v. City of East Providence,* 480 A.2d 1375, 1379 (R.I.1984)). This rule, however, does not apply when the conflicting charter provision has been legislatively ratified. *Id.* In such instances, we view the conflicting charter provision as "a special act [that] takes precedence over any inconsistent provisions of the general laws." *Id.*

We agree with the school committee that because most of sec. 6–6 was not ratified by the Legislature, it is not helpful in resolving the issue before us.[3] Thus, if the town charter limits the school committee's right to retain its own attorney, such restriction must be found in the language of sec. 6–4, which was ratified by the Legislature in 1963.[4] *See* P.L.1963, ch. 187. Consequently, even if we were to conclude that § 16–2–9 empowers school committees to hire independent counsel, the right of the Johnston School Committee to do so would be superceded by sec. 6–4, because under our well-settled jurisprudence, the legislatively-ratified charter provision would take precedence over the general law. *Napolitano,* 516 A.2d at 1349.

## C. Is the Johnston School Committee a "Department" of the Town?

Despite the legislative validation of sec. 6–4, the school committee maintains that this provision of the town charter does not affect its right to retain independent legal counsel because it is not a "department" of

the town. Conversely, the town argues that although the charter does not explicitly refer to it as such, the school committee nevertheless is a department of the town government that is encompassed within the ambit of sec. 6–4. To support this position, the town notes that in *Cummings v. Godin,* 119 R.I. 325, 330, 377 A.2d 1071, 1073 (1977), we held that although school committees act as agents of the state, they are not state agencies but municipal bodies.

In *Cummings,* a school teacher argued that a home rule provision prohibiting city employees from holding any elective office did not preclude his candidacy for state senate. The teacher maintained that he was not an employee of the city, but rather an agent of the state, because the state constitution mandates that education is a matter of state responsibility. We disagreed, and held that "school committees, although exercising a portion of the state's power over education, are, nonetheless, municipal bodies, and their employees * * * are municipal employees." *Cummings,* 119 R.I. at 330, 377 A.2d at 1073. We noted that the teacher "[was] employed by a *department* of the city which is supported by the taxpayers of that city, and he receives his paycheck from the city." *Id.* at 331, 377 A.2d at 1074.[5] (Emphasis added.)

After *Cummings,* this Court again had occasion to consider the effect of a home rule charter on the rights of a school committee. *See Coventry School Committee v.*

---

**3.** Section 6–6 of the Johnston Town Charter was amended in 1982 to prohibit departments and agencies of the town from hiring outside legal counsel, unless such action was allowed by the town charter or by ordinance. This amendment, highlighted above, has not been ratified by the Legislature.

**4.** The Johnston Town Charter was amended and again ratified in 1965. The difference in

language between the 1963 and the 1965 versions is not material to this case.

**5.** Despite our holding that the teacher was a city employee, and thus precluded by the charter from running for state office, he ultimately was successful in challenging the charter provision on First Amendment grounds.

*Richtarik,* 122 R.I. 707, 411 A.2d 912 (1980). Like the case before us now, the charter provision in *Richtarik* set forth the town solicitor's responsibilities as legal representative of the town. It stated in pertinent part:

"(1) 'The town solicitor shall serve as chief legal advisor to the council and to the town manager;

"(2) '[t]he town solicitor shall appear for and protect the rights of the town in all actions, suits, or proceedings, civil or criminal, in law or equity, brought by or against it, or for or against any of its departments, offices or agencies, including the council, the manager and the school committee;

"(3) '[t]he town solicitor shall also perform such other duties, appropriate to his office, as the council and the manager may require;

"(4) '[t]he town solicitor shall examine and approve the form of all ordinances and resolutions, of all invitations to bid, contracts, and other legal documents issued by any department, office or agency of the town;

"(5) '[a]ll written opinions of the town solicitor furnished to the council, the manager, and all departments, offices and agencies of the town shall be filed with the town clerk and shall become a public record.'" *Id.* at 711–12, 411 A.2d at 914 (quoting relevant portion of Coventry Town Charter).

■ We interpreted the charter provision in *Richtarik,* which had been legislatively ratified, to require that the town solicitor serve as the school committee's sole source of legal representation. The defendants attempt to distinguish *Richtar-*

*ik* from the present case by noting that the Coventry charter provision made explicit reference to the "school committee." A closer reading of *Richtarik* reveals, however, that this distinction was not critical to our holding in that case. Citing subsection (2) of the applicable charter provision, the trial justice ruled that the Coventry solicitor was responsible for representing the school committee in litigation, but that the committee was free to seek legal advice elsewhere with respect to non-litigation matters because the other subsections of the charter provision were silent on the subject.

On appeal, this Court disagreed with the trial justice's reasoning and interpretation of the charter provisions. We explained that the "limited advisory role given the solicitor by the trial justice is completely at odds with and effectively nullifies the mandate concerning the solicitor's written opinions, which are to be given to all 'departments, offices, and agencies of the town.' " [6] In addition, subsection (2) of the charter provision specifically referred to the school committee as a town department. When we decided *Richtarik,* we reiterated our reasoning in *Cummings,* that "school committees are not 'state agencies' because they act only on matters of local concern; and * * * although the committees exercise a portion of the state's power in the field of education, they are nonetheless 'municipal bodies' and their employees 'municipal employees.' " *Richtarik,* 122 R.I. at 714, 411 A.2d at 915. We also held that even though the portion of the town charter that delineated the solicitor's advisory role did not refer explicitly to the school committee, the docu-

---

**6.** Section 6–5 of the Johnston Town Charter is strikingly similar to the subsection set forth in the Coventry Town Charter. Section 6–5 provides:

"Written opinions to be public.

"All written legal opinions furnished to the mayor, the town council and all departments, offices and agencies of the town shall be filed with the town clerk and become a public record."

ment was to be interpreted so that the solicitor's office would serve as the sole source of legal assistance for all the various municipal boards, departments, and agencies, including the school committee. Thus, the Coventry School Committee lacked the authority to retain its own counsel.

We fail to see any meaningful distinction between the charter provision in *Richtarik* and the one at issue here. Like the Coventry Town Charter, sec. 6–4 of the Johnston Town Charter has been ratified by the Legislature and requires the town solicitor to provide legal services to "all * * * departments, offices and agencies of the town." We interpreted this language in *Richtarik* as requiring that the school committee be represented by the town solicitor. Moreover, it is clear from our analysis in *Richtarik* that we relied heavily on this Court's rationale in *Cummings*, in which we defined school departments as municipal bodies. We see no reason to depart from this reasoning. We therefore are not persuaded by the defendants' attempt to distinguish *Richtarik* from the case before us on the ground that the Coventry Town Charter referred explicitly to the school committee while the Johnston Town Charter does not. We hold that sec. 6–4 of the Johnston Town Charter, which requires the town solicitor to represent "all * * * departments, offices and agencies of the town," applies to the school committee and prohibits it from retaining independent legal counsel, unless, as will be described below, the town solicitor is unable to represent the school committee because of ethical considerations.

### D. Conflicts of Interest

Notwithstanding our conclusion that sec. 6–4 of the Johnston Town Charter requires the town solicitor to serve as the school committee's legal counsel, we realize that situations may arise in which the solicitor's ethical and professional obligations may prevent him from doing so. This Court previously recognized this potential conflict in *Richtarik*, where we explained that:

> "There is a well-recognized exception to this principle which recognizes the implied authority of a municipal board or officer to hire counsel in the good-faith prosecution or defense of an action taken in the public interest and in conjunction with its or his official duties where the municipality's attorney refuses to act or is incapable of or is disqualified from acting." *Richtarik*, 122 R.I. at 715, 411 A.2d at 916.

In the days since *Richtarik* was decided, relationships statewide between municipalities and their respective elected school committees steadily have worsened. The annual battles, usually but not always over money, routinely have resulted in relationships that are at best strained and at worst toxic. In this light, the exception carved out in *Richtarik* seems prophetic.

For instance, § 16–2–21.4(b) authorizes school committees to sue municipalities in the event of inadequate school funding. In such cases, it would be difficult if not impossible for the solicitor to represent both parties, and there is perhaps no better example highlighting our concerns than the truculent relations between the Johnston School Committee and the town government.

Nevertheless, there are many occasions where a town solicitor's duties may not be impeded by ethical concerns. For example, in matters concerning bidding, contracts, tort defense, and issues arising under G.L.1956 § 38–2–1 (public records) and G.L.1956 chapter 46 of title 42 (open meetings), a school committee's interests may not be adverse to the town's. Conflicts inevitably will arise, however, and

when they do, solicitors will find themselves in difficult situations.

■ The school committee suggests that its interests and the town's are so inherently adverse that the solicitor may be unable to represent both parties, regardless of the particular circumstances. Although *Richtarik* described such circumstances as an exception, rather than a rule, the school committee notes that the current version of Rhode Island's Code of Ethics was not in force at that time, and the parties in that case did not raise any issues concerning an earlier version of the code. Moreover, the school committee contends that the Rules of Professional Conduct may bar the solicitor from serving as its attorney while also representing the town.

We agree with the school committee to the extent the Code of Ethics and the Supreme Court Rules of Professional Conduct are significant in determining whether the solicitor can properly represent both the school committee and the town. However, we do not believe that these strictures serve as an absolute bar. As noted above, there are many instances where the school committee's interest and the town's will not be adverse, and in fact,

they may often be closely aligned. Conflicts must be determined utilizing a case-by-case analysis and will necessarily require good faith dealing among the solicitor, the school committee, and the municipality.

We believe that the Rhode Island Code of Ethics [7] and our Rules of Professional Conduct serve as adequate guideposts for the parties. For example, G.L.1956 § 36–14–5(b) of the Code of Ethics provides that:

"No person subject to this code of ethics shall accept other employment which will either impair his or her independence of judgment as to his or her official duties or employment or require him or her, or induce him or her, to disclose confidential information acquired by him or her in the course of and by reason of his or her official duties."

The Rules of Professional Conduct also provide guidance when a solicitor is faced with conflicting interests. Specifically, Article V, Rule 1.7 of the Supreme Court Rules of Professional Conduct provides:

"Conflict of Interest: General Rule. (a) A lawyer shall not represent a client

---

7. The state's commitment to ensuring ethical conduct among its public officials is so imperative that it has been amended to the state's constitution. Article 3 of the Rhode Island Constitution, in relevant part, provides as follows:

"Section 7. Ethical conduct.—The people of the state of Rhode Island believe that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior."

Consistent with this goal, article 3 creates an Ethics Commission with rule-making authority:

"Section 8. Ethics commission—Code of ethics.—The general assembly shall establish an independent non-partisan ethics commission which shall adopt a code of ethics including, but not limited to, provisions on conflicts of interest, confidential information, use of position, contracts with government agencies and financial disclosure. All elected and appointed officials and employees of state and local government, of boards, commissions and agencies shall be subject to the code of ethics. The ethics commission shall have the authority to investigate violations of the code of ethics and to impose penalties, as provided by law; and the commission shall have the power to remove from office officials who are not subject to impeachment."

if the representation of that client will be directly adverse to another client, unless:

"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

"(2) each client consents after consultation.

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) the lawyer reasonably believes the representation will not be adversely affected; and

"(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

We recognize that there exists a public policy argument that in the current environment, school committees should have their own legal counsel. That debate, however, should be resolved in the public forum or in the Legislature, not in the courts.

## IV

### Conclusion

For the reasons stated herein, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice ROBINSON, dissenting.

Given my understanding of (1) the General Assembly's constitutionally mandated role with respect to public education and (2) the General Assembly's statutory delegation of its own broad powers and responsibilities to the several school committees of the state, I cannot in good conscience join in my colleagues' legal conclusion that the charter of the Town of Johnston somehow partially overrides a long-standing and far-reaching state statute and permits someone other than the elected members of the Johnston School Committee to designate the attorney who will represent the school committee as that body tries to carry out the broad and vitally important duties that the General Assembly has delegated to it. I sincerely acknowledge the thoughtful nature of the analysis upon which the majority opinion is based; but my own review of the relevant statutory charter provisions in light of certain key canons of statutory construction has led me to a different conclusion, and therefore I must respectfully but vigorously dissent.

I concede that the interpretive question which this case presents is reasonably close. Nevertheless, in the absence of *specific* language in the charter dealing with the issue of legal representation for the school committee, I am unable to join in an opinion that in effect holds that the General Assembly's ratification of the Johnston Town Charter (which contains notably unspecific language about the entities to be represented by the town solicitor) constituted an implied repeal of G.L.1956 § 16–2–9 to the extent that said statute empowers the Johnston School Committee to be able to choose its own legal counsel. I cannot agree that in this instance there was any partial implied repeal of that statute—a statute which has constituted for a long while a key directive with respect to the implementation of public education in this state.[8]

8. I agree with the majority that the issue before us in this case is purely legal and that,

## Discussion

## I

### The Statutorily Conferred Powers of School Committees

Although it is crystal clear that article 12 of the Rhode Island Constitution accords vast responsibility and power to the General Assembly with respect to the promoting of public education,[9] it is equally clear that, by its enactment of title 16 of the General Laws, the General Assembly long ago chose to delegate much of that constitutionally based responsibility to the school committees of the several cities and towns. In that regard, the very broad language of section 16–2–9 is especially noteworthy:

> "(a) The entire care, control, and management of all public school interests of the several cities and towns shall be vested in the school committees of the several cities and towns." [10]

The potency of that simple declarative sentence, written in laudably plain English, is remarkable. In my opinion, diminishment of any of the broad statutorily conferred powers of school committees should not lightly be inferred; the presumption should be that the school committees of the several cities and towns retain those powers unless they are explicitly removed by the General Assembly. In view of the sweeping nature of the General Assembly's delegation of its responsibility concerning public education in section 16–2–9, it is my opinion that the Johnston Town Charter should not be read as broadly as the majority does.

I am convinced that the right to hire counsel is an inherent management right of school committees; and, since the General Assembly in the exercise of its plenary responsibility for education has not chosen to remove that right by specific legislation, it is my view that the Johnston School Committee retains the right and power to choose its own counsel.

## II

### Latent Ambiguity

Turning now with narrower focus to the specific legal issue at hand, it is undisputed that the most crucial language in the Johnston Town Charter is the following portion of section 6–4 of that document:

> "The town solicitor shall be the attorney for the town and legal advisor to the mayor, town council, and all other departments, offices and agencies of the town government and shall direct the work of the assistant solicitors."

The ultimate question raised by this case is: how far-reaching is the term "all other departments" as it appears in the quoted section of the charter? In my judgment, a school committee does not

---

therefore, the *de novo* standard of review applies.

9. Article 12, section 1, of the Rhode Island Constitution reads in pertinent part as follows:

"The diffusion of knowledge, as well as of virtue among the people, being essential to the preservation of their rights and liberties, it shall be the duty of the general assembly to promote public schools * * * and to adopt all means which it may deem necessary and proper to secure to the peo-

ple the advantages and opportunities of education * * *."

10. The right to hire counsel seems to me to be an inherent component of the statutorily delegated responsibility for the "entire care, control, and management of all public school interests * * *." G.L.1956 § 16–2–9(a). It would be difficult to identify another right that is more quintessentially a management right than the right to determine who shall be the legal advisor and the legal representative of a school committee.

constitute *simpliciter* one of the "departments" of municipal government.

The majority opinion considers the words "all other departments" in the charter as being a sufficiently clear statement by the legislators of their intent to include the school department among the several town departments for whom the town solicitor shall be the attorney.[11] I appreciate the attractiveness of that straightforward reading of the charter, but I believe that it fails to take sufficiently into account the *radical difference* between the school department and the rest of town government (which is overseen by the mayor and the town council). It is because of that *radical difference* that I do not believe that the generic reference in the Johnston Town Charter to "all other departments" suffices to repeal or restrict by implication section 16–2–9 of the General Laws, which constitutes the General Assembly's uniquely broad and powerful delegation of its responsibility for education to the school committees of the several cities and towns.

Even language that at first glance *appears to be* quite clear is sometimes infected with latent ambiguities.[12] Many apparently clear statements must be understood contextually. Giving due consideration to the *context* of a statement does not represent an abandonment of the plain meaning rule;[13] it is rather a refinement of that rule, reflecting the inherent limitations of human language. Judge Easterbrook of the Seventh Circuit has provided an instructive example relative to the need to consider context when interpreting language:

> "If someone at a dinner party says: 'Pull up a chair to the table', he means a table chair and not an overstuffed easy chair, even though both are called chairs." *In the Matter of Erickson*, 815 F.2d 1090, 1092 (7th Cir.1987).[14]

11. It is also interesting to note that section 6–4(1) of the Johnston Town Charter imposes on the town solicitor the duty to appear for the town in all actions brought by or against the town "or for or against any of its departments, including the board of canvassers and registration." One can infer from that clarifying statement that the drafters of the charter were aware of the elusiveness of the word "department."

12. Although at first blush it may seem counterintuitive to maintain that the words "all other departments" in the charter do not necessarily mean each and every department, such restrictive interpretations of seemingly broad language are by no means unprecedented. Courts frequently construe apparently very broad words in a statute or similar provision as being in actuality more circumscribed in scope. *See, e.g., Raso v. Wall,* 884 A.2d 391, 395 (R.I.2005) (construing statutory language providing that an application for post-conviction relief "may be filed at any time" as meaning "at any *reasonable* time"); *see also Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 780, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)

(referring to the Supreme Court's "longstanding interpretive presumption" that the word "person" in a statute "does not include the sovereign"); *United States v. Palmer,* 16 U.S. (3 Wheat.) 610, 631, 4 L.Ed. 471 (1818) (Marshall, C.J.) (interpreting in a restrictive manner the facially all-inclusive words "any person or persons"); *see generally, Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

13. *See, e.g., Kells v. Town of Lincoln,* 874 A.2d 204, 213 (R.I.2005) ("When the language of a statute, or, correspondingly a charter, is clear and unambiguous, we interpret the statute literally and give the words their plain and ordinary meaning."); *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996).

14. Similarly, in addressing the need to consider context as one interprets any communication, Professor Reed Dickerson's perceptive treatise on statutory interpretation quotes the following example provided by a famous twentieth century philosopher:

> "Some one says to me: 'Shew the children a game.' I teach them gaming with dice,

In my opinion, the term "department" is not unambiguous in the context presented here, and therefore the "plain meaning rule" is inapplicable. I believe that the word "department" in the charter is not as crystalline as it first appears: upon reflection, one realizes that the contextual reality is complex.[15] There are departments and there are departments. To put it plainly, the Johnston School Department (which reports to the school committee and not to the town government as such) is radically different in kind from the other town departments: by virtue of the sweeping language of section 16–2–9, the General Assembly's constitutional responsibility for public education has been delegated to the Johnston School Department (through the school committee). That simple fact profoundly differentiates this one department from all the others.

In addition, I find highly significant the fact that, pursuant to the terms of the Johnston Town Charter, the five members of the Johnston School Committee are elected in a popular election. They are chosen by the people through the electoral process, and then the extensive responsibilities for public education which the General Assembly has delegated to school committees become theirs. This fact further differentiates the school committee (and the school department which it supervises) from the other departments of town government—which are not subject to supervision by a separately elected group of officials but rather are directly supervised by the central town government.

## III

### There Was No Repeal by Implication

It is a basic principle of statutory construction that repeals by implication are disfavored. *Berthiaume v. School Committee of Woonsocket*, 121 R.I. 243, 248, 397 A.2d 889, 893 (1979).[16] Yet, the major-

---

and the other says 'I didn't mean that sort of game.' " Reed Dickerson, *The Interpretation and Application of Statutes* 111–12 (1975) (quoting Ludwig Wittgenstein, *Philosophical Investigations* 33 n. (G.Anscombe, transl.1953)).

**15.** The famous observation of Justice Holmes in the case of *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918), comes to mind: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

**16.** In *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the United States Supreme Court succinctly summarized as follows the thrust of the canon of statutory construction dealing with the disfavored nature of repeals by implication—a venerable canon which is an aid to us in our heuristic efforts just as it is an aid to the Justices of the Supreme Court in Washington:

"In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* at 550, 94 S.Ct. 2474.

The following sentences from an opinion of the Supreme Court of Wyoming cogently summarize the implications of the interpretive canon that counsels that repeals by implication are disfavored:

"One asserting implied repeal bears the burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of affecting a repeal. Furthermore, it must be shown that the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject." *Shumway v. Worthey*, 37 P.3d 361, 367 (Wyo.2001).

In accordance with those venerable principles, I believe that the proper approach in this case is to read the language in the charter as not extending to the Johnston School Committee. It is entirely possible to reconcile

ity's interpretation of the charter in effect treats the General Assembly's approval of the charter as constituting a *sub silentio* repeal by implication of one of the powers that I consider to be necessary for school committee autonomy—namely the right to choose who will be its legal representative.[17]

The comprehensive reach of section 16–2–9 should be constantly borne in mind. That statute vests "[t]he *entire care, control, and management* of all public school interests" in Rhode Island's various school committees. (Emphasis added.) Assuming, as I do, that the right to control legal representation is a core aspect of management, I do not believe that the noticeably general language contained in the Johnston Town Charter should be understood as nullifying that important right, which springs from a statute that deals comprehensively with all aspects of public education.[18] The charter that was ratified by the General Assembly is utterly lacking in

any words of specificity with respect to school committees.[19]

It is undeniable that the charter and section 16–2–9 of the General Laws are *in pari materia*, and therefore there comes into play the rule that in such a situation it is proper to harmonize, whenever possible, two provisions that at first glance seem to be irreconcilable. *See, e.g., Kells v. Town of Lincoln,* 874 A.2d 204, 212 (R.I.2005) ("When confronted with statutory provisions that are in *pari materia,* this Court will 'construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope.' ") (quoting *State v. Dearmas,* 841 A.2d 659, 666 (R.I.2004)); *State v. Ahmadjian,* 438 A.2d 1070, 1081 (R.I.1981); *see also Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936) ("The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject,

section 16–2–9 with the charter provision at issue by reading the charter as addressing all departments *except for* the school committee (which is not a department in the same sense that the others are).

17. Courts should be even more reluctant to find a repeal by implication when the statute at issue is of venerable vintage (as is section 16–2–9). I believe that there is a great deal of wisdom in the rule that "it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." *Los Angeles County v. Frisbie,* 19 Cal.2d 634, 122 P.2d 526, 532 (1942).

18. It should go without saying that I do not question the ultimate right of the General Assembly to remove with respect to all or some school committees the power to choose legal counsel from among the powers delegated to school committees. *See generally Coventry School Committee v. Richtarik,* 122 R.I. 707, 411 A.2d 912 (1980). As to the case at

bar, however, I simply do not believe that the General Assembly has taken that step.

19. Although I firmly believe that this case can be decided on the basis of settled principles of statutory construction, I cannot help but recall the old maxim that actions speak louder than words—and I find it worthy of comment that, even though section 6–4 of the charter was ratified in 1963, for more than three decades thereafter the Johnston town government apparently did not read the charter as including the school department among the departments to be represented by the solicitor. *See United States v. Philbrick,* 120 U.S. 52, 59, 7 S.Ct. 413, 30 L.Ed. 559 (1887) (Harlan, J.) ("A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned."); *see also Reed & Reed, Inc. v. Weeks Marine, Inc.,* 431 F.3d 384, 388 (1st Cir.2005) (stating, in the context of contract interpretation, that "the parties' subsequent course of performance may be instructive").

effect should be given to both if possible."); *DelSanto v. Hyundai Motor Finance Co.,* 882 A.2d 561, 562 n. 2 (R.I.2005) ("It is a fundamental principle of statutory interpretation that every effort is to be made to harmonize statutes."); *see generally Tennessee Valley Authority v. Hill,* 437 U.S. 153, 189, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

I am convinced that harmonization of the charter and of the statute can be achieved in this instance by not reading the charter with maximal broadness. Instead, we should read the charter as not including the unique entity[20] that is the school department as being included among the entities which are to be represented by the town solicitor. If the school department is understood as being fundamentally different in kind from the other departments, then it becomes entirely possible to harmonize the two enactments.

## IV

### Some Significant Precedents

Before concluding this dissenting opinion, I feel that I should comment briefly on some of the decided cases that are referenced and discussed in the majority opinion.

20. I am in full agreement with the hearing justice in this case who quite properly made reference to "[t]he independent and unique nature of the school committee * * *."

The fact is that school committees, because of the delegation to them by the General Assembly of its plenary responsibility with respect to education, are radically distinguishable from other municipal departments. In my judgment, the hearing justice in this case was entirely correct when he observed:

"Although school committees are agents of the state, they perform the state function of educating children residing in specific communities. It is this function which places

### A

### *Royal v. Barry*

I believe that the view that I express in this dissenting opinion is entirely consistent with the following quite definitive statement by this Court in the case of *Royal v. Barry,* 91 R.I. 24, 30–31, 160 A.2d 572, 575 (1960):

"[N]o provision affecting education contained within a home rule charter, so called, can effectively regulate the conduct of school committees as agents of the state unless expressly validated by an act of the general assembly. In other words a school committee's exercise of its powers cannot be regulated by local legislation whether by ordinance or charter."

The majority opinion's reference to article 13 of the amendments of the Rhode Island Constitution (the "Home Rule" amendment) fails to persuade me that article 12 of the same amendments to the constitution has thereby been trumped. As this Court so forcefully stated in *Royal,* 91 R.I. at 31, 160 A.2d at 575:

"Article [12] of the constitution expressly and affirmatively reserves to the legislature sole responsibility in the field of education and nothing contained in article [13] is in derogation thereof."[21]

school committees in a unique position, unlike any other municipal agency or department. In that respect, school committees are *sui generis;* when performing their delegated responsibilities of educating children, they are legally neither a state agency nor a municipal department."

21. See also *Amico's Inc. v. Mattos,* 789 A.2d 899, 903 (R.I.2002) ("[A]s has long been the case, the Legislature continues to exclusively occupy the fields of education, elections, and taxation, thereby precluding any municipality's foray into these areas, absent specific legislative approval.").

## B

### *Cummings v. Godin*

It is true that in *Cummings v. Godin*, 119 R.I. 325, 331, 377 A.2d 1071, 1074 (1977), this Court noted in passing that the defendant in that case, a public school teacher, was "employed by a department of the city * * *." It is important to bear in mind, however, that the entire focus of that case was on the principle that school committees are not state agencies but rather entities that act locally; the opinion in *Cummings* does not in any way purport to analyze or define the word "department." The issues that were litigated in that case have no substantive bearing on those which this case involves.

## C

### *Coventry School Committee v. Richtarik*

The majority opinion relies heavily on the case of *Coventry School Committee v. Richtarik*, 122 R.I. 707, 411 A.2d 912 (1980). For my part, I do not consider *Richtarik* to be dispositive. My colleagues in the majority state that they "fail to see any meaningful distinction between the charter provision in *Richtarik* and the one at issue here." I respectfully disagree, since I believe that the two charters are radically distinguishable. The Coventry Town Charter *specifically* mentioned the school committee, whereas the Johnston Town Charter does not. Absent the sort of specificity that was contained in the charter at issue in *Richtarik*, I am not able to conclude that in this case there has been the sort of **express validation** by the General Assembly that was the determinative factor in *Richtarik*.

It is noteworthy that the following language was contained in the Coventry Town Charter at issue in *Richtarik*:

> "The town solicitor shall appear for and protect the rights of the town in all actions, suits, or proceedings, civil or criminal, in law or equity, brought by or against it, or for or against any of its departments, offices or agencies, including the council, the manager and the school committee * * *." *Richtarik*, 122 R.I. at 711, 411 A.2d at 914 (quoting from the Coventry Town Charter).

The very specific reference to "the school committee" in the portion of the Coventry Town Charter dealing with the responsibilities of the town solicitor is crucial. No similar language specifically referencing the school committee appears in the Johnston Town Charter. (In addition, the Court in *Richtarik* went out of its way to observe that, under the Coventry Town Charter, "the 'school committee' is specifically designated as being within the departmental category." *Richtarik*, 122 R.I. at 714, 411 A.2d at 915.)

### Conclusion

In view of the sweeping nature of section 16-2-9, a key component of the statutory mechanism through which the General Assembly delegated much of its constitutional responsibility for education to the school committees of the several cities and towns, I do not believe that the anodyne reference in section 6-4 of the Johnston Town Charter to the "legal advisor to the mayor, town council, and all other departments" should be understood as referring to the Johnston School Committee.[22]

Therefore, I respectfully dissent.

---

22. This case is clearly an important one, and the underlying issue of public policy (viz.,

who shall choose legal counsel for school committees) may well arise in other towns and cities. For this reason, I respectfully suggest that the issue might well be worthy of immediate legislative attention.

Like the majority, I have today focused only on the facts of the case before us. But I cannot blind myself to the larger issue.

Whether good education and responsible government would best be served by having separate or unified legal representation (prescinding for the moment from situations of inherent ethical conflict) is the sort of question with which legislative bodies are best suited to grapple.