DECISION
This matter came on for trial and final hearing on Fred Erdman's Petition for Post Conviction Relief on November 30, 2007.
Mr. Erdman was convicted of nine separate counts of Sexual Assault in the First Degree. He was sentenced to serve 25 years at the Adult Correctional Institution, with each count running concurrently.
Mr. Erdman's claim is based solely on the issue of his parole eligibility. He claims that a provision of law mandates that he be paroled. The Court questions, without deciding, whether this is a proper issue for a claim under the post conviction relief statutes. Rather than discussing that issue, the Court will address the merits of Mr. Erdman's claim.
Mr. Erdman relies on one statute to establish his parole eligibility:
 G.L. 1956 § 13-8-10. Prisoners subject to more than one sentence. — (a) If a prisoner is confined upon more than one sentence, a parole permit may be issued whenever he or she has served a term equal to one-third (1/3) of the aggregate time which he or she shall be liable to serve under his or *Page 2 
her several sentences, unless he or she has been sentenced to serve two (2) or more terms concurrently, in which case the permit shall be issued when he or she has served a term equal to one-third (1/3) of the maximum term he or she is required to serve.
The next subsection of the statute discusses the parole eligibility for parole for offenders committing crimes while serving a sentence for a previous crime. The statute states that a parole "permit may not be issued until" certain commitment time has been served. The parole statutes use the words "shall" and "may." Without a doubt, the use of the word "shall" mandates compliance, removing discretion. Mr. Erdman's contention is that the latter part of § 13-8-10(a) uses the word "shall" so he must be afforded parole.
The Rhode Island Supreme Court has already addressed this identical issue:
 The applicant asserted that the second clause of this section creates a separate, nondiscretionary parole procedure for prisoners serving concurrent sentences that entitles him to parole on his concurrent life sentences. The applicant's reading of § 13-8-10(a) misconstrues the clear intent of the General Assembly that created different procedures for prisoners serving only concurrent and only consecutive sentences. The applicant would have this Court read the clause relating to concurrent sentences in isolation from the preceding clause. The consequence of accepting the applicant's argument would be to require the Board to follow a procedure intended to apply to prisoners serving only concurrent sentences whenever the Board assesses the parole status of prisoners who are serving concurrent sentences in addition to one or more consecutive sentences. In our opinion, such a reading would be contrary to public policy and in contravention of the clear intent of the Legislature. DeCiantis v. State, 666 A.2d 410, 413. (R.I. 1995)
Obviously, the Court focuses on the entirety of the statutory scheme empowering the parole board to grant parole. It is § 13-8-9 which controls the parole board's discretionary power to grant parole. The General Assembly did not intend to mitigate *Page 3 
that discretion by its enactment of § 13-8-10, it merely attempted to clarify the entitlement to the board's discretion in the situation of concurrent terms. The statutory scheme must be read in parimateria, and therefore, the courts "will construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope." Town of Johnston v. Santilli, 892 A.2d 123, 137 (R.I. 2006) (quoting State v. Dearmas, 841 A.2d 659, 666 (R.I. 2004)).
Again, the reasoning of the high court was quite clear inDiCiantis:
 He has asked this court to mandate his parole on the two concurrent life sentences after only ten years, even though a prisoner who is serving only one life sentence consecutively to another life sentence must serve twenty years before even seeking parole. To make such a calculation would, in effect, reward applicant for committing an additional [crime]. We would not impute such an unreasonable meaning to a statute, even if a literal reading of the statute lent itself to such an interpretation. Matter of Falstaff Brewing Corp. re: Narragansett Brewery Fire, 637 A.2d 1047, 1050 (R.I. 1994). In the instant case, no reading, no matter how literal, of § 13-8-13(b) would support applicant's contention. DeCiantis, 666 A.2d at 413.
Clearly, the General Assembly did not intend to reward Mr. Erdman with earlier parole for having committed nine separate sexual assaults. Accordingly, Mr. Erdman's application for post-conviction relief is denied and dismissed.